H. T. BUSE v. MAHLON BARTLETT ET AL.

No. 16.

**1. Judgment Against Nonresident—Presumptions Indulged.**—In this State the same presumptions as to jurisdiction and regularity of proceedings are indulged in favor of the judgment rendered against a nonresident on attachment and service by publication, as in favor of such judgment when there has been personal service.

**2. Same—Failure to File Statement of Facts.**—The failure to file a statement of facts after the court had obtained jurisdiction by attachment and rendered judgment on service by publication, could not render the judgment void, this provision of the statute being intended to secure to the nonresident defendant the benefit of a review of the judgment in a direct proceeding.

**3. Unorganized Counties — Act of 1866 Attaching Wichita for Judicial Purposes not Repealed.**—The Act of November 6, 18 6, attached Wichita to Montague for judicial purposes, and provided also that it should become attached to Clay when the latter organized; and this latter provision was not repealed by the Act of August 10, 1870, attaching Wichita to Montague, and the act amendatory thereof of February 13, 1884, which failed to attach Wichita to any organized county.

**4. Case not Followed—Implied Repeals.**—The case of Holden v. The State, 1 Texas Court of Appeals, 239, holding that said Act of 1866 was impliedly repealed by the subsequent legislation, is not followed. When a general revising act expressly repeals all inconsistent acts and parts of acts, this implies that if there are parts of former acts (as in this case) not embraced in the new act, and not inconsistent therewith, they are not repealed.

**5. Proceedings In Rem — Foreclosure Sale by Commissioner.**—When the District Court has obtained jurisdiction of the property in controversy by a proceeding substantially in rem, it has the power, in order to execute the decree of foreclosure, to designate some officer to make the sale at the time, place, and in the manner usual in foreclosure sales in this State; and a sale made accordingly is not void, as would be an ordinary execution sale made in violation of a mandatory statute.

APPEAL from Wichita. Tried below before Hon. P. M. STINE.

*W. W. Flood,* for appellant.— 1. In collateral proceedings judgments of courts of general jurisdiction will be presumed to be regular and valid, unless it is affirmatively shown to the contrary by the record. Murchison v. White, 54 Texas, 78; Withers v. Patterson, 27 Texas, 491; Guilford v. Love, 49 Texas, 715.

2. The order by the District Court of Montague County to the sheriff of Clay to sell the land in controversy, and the sale thereof by said sheriff, was valid and proper, and his deed vested the title in the purchaser, notwithstanding by the acts of the Legislature of 1874 Wichita County, wherein the land was situated, may have been left unattached to any organized county through whose constituted authorities a mere execution sale might have been made as provided by statute; because the District

Courts of this State have the inherent authority to carry into effect their decrees, and grant any relief that at common law either courts of law or equity could grant. Rev. Stats., arts. 1122, 1339; Merrill v. Roberts, 64 Texas, 445; 2 Jones on Mort., 3 ed., secs. 1573, 1608, 1637; Voigtlander v. Brotze, 59 Texas, 286; Lewis v. Dennis, 54 Texas, 491.

*Barrett & Eustis*, for appellees.—1. A sale of land in an unorganized county under execution must be made by the officer of the county and at the court house of the county to which it is attached for judicial purposes at the date of the sale, and a sale by any other officer or at any other place is a nullity and conveys no title. Moody's Heirs v. Moeller, 72 Texas, 635; Sinclair v. Stanley, 64 Texas, 67; Casseday v. Norris, 49 Texas, 618; Alred v. Montague, 26 Texas, 735; Brown v. Christie, 27 Texas, 76; Pasch. Dig., arts. 3776, 6226; Rev. Stats., art. 2303; Acts Feb. 10, 1874, chap. 9, p. 7; Freem. on Ex., sec. 311.

2. It is only in equitable proceedings under proper pleadings that the District Court can appoint a commissioner to sell real estate, and in such cases the commissioner must act under the decree, and not under an order of sale issued by the clerk; and a sale by the commissioner passes no title until approved by the court, and if not approved is a nullity. Brown v. Christie, 27 Texas, 76; Pasch. Dig., art. 1480; Tucker v. Murphy, 66 Texas, 359; Rorer on Jud. Sales, secs. 2–5; Freem. on Ex., sec. 311; Lewis v. Dennis, 54 Texas, 491; Bartley v. Harris, 70 Texas, 181; Williamson v. Berry, 8 How., 495; Dalton v. Rainey, 75 Texas, 516.

3. In suits by publication all proceedings are strictly construed, and the same presumptions as to their regularity are not indulged as in suits by personal service; and where the record shows affirmatively that the statute has not been complied with, the proceedings are void. Blossman v. Letchford, 17 Texas, 647; Harris v. Daugherty, 74 Texas, 1; Pasch. Dig., arts. 25, 1488, 1423, 1507; Stewart v. Anderson, 70 Texas, 588; Rev. Stats., art. 1198, sec. 3; Galpin v. Page, 18 Wall., 364; Allen v. Wyser, 29 Texas, 153.

STEPHENS, Associate Justice.— Appellees, on the 19th of April, 1889, brought suit in the ordinary form of trespass to try title in the District Court of Wichita County, to recover of appellant a section of land, which resulted in a judgment in their favor, on the 8th day of November, 1889, from which this appeal is prosecuted.

In December, 1873, W. W. Purinton brought suit in the District Court of Montague County against Thomas R. Odell, in an action of debt, and sued out a writ of attachment, which was levied upon the section of land in controversy and also upon another section of land, both situated in Wichita County. He alleged his residence to be in Grayson County, and that said Odell was a nonresident of the State of Texas, and made the

necessary affidavit to obtain service by publication, as well as a writ of attachment. The citation was duly published, in December, 1873, and January, 1874, in the Gainesville Gazette, a newspaper published in Cooke County, Texas, for four successive weeks prior to the return day, as shown by the return thereon, though the dates of publication were not stated. The citation commanded that it be served by making publication in some newspaper published in the county of Montague, if there should be a newspaper published in said county, but if not, then in the nearest county where a newspaper was published. The necessary attachment bond was duly executed, and the writ of attachment was levied on the 19th day of December, 1873. The defendant in the suit made no appearance, and in July, 1874, judgment was rendered against him in said court in the sum of $512, foreclosing the attachment lien on said two sections of land and directing the clerk to issue an order of sale to the sheriff of Clay County, Texas, commanding him to seize and sell said property as under execution on the first Tuesday in September, 1874. This order of sale was duly issued as directed, and was executed by the sheriff of Clay County, who, after making due advertisement, sold said property to the highest bidder, before the court house door of Clay County, on the first Tuesday in September, 1874, for the aggregate sum of $561.60, which satisfied the judgment, interest, and costs; the plaintiff Purinton being the successful bidder, to whom deed was made. On the 14th day of August, 1875, by deed duly executed and recorded, Purinton conveyed the tract of land in controversy to C. F. Lucas, and thereafter, by warranty deed dated December 1, 1885, and duly recorded in Wichita County, said Lucas conveyed to appellant. Appellant never had actual possession of the land, but his vendor, Lucas, was in the possession and use of it from May 15, 1883, to May 15, 1886, and since May 15, 1886, it has not been occupied. It is agreed by the parties to this suit that the rents for these three years were worth $192. We fail to find in the record any evidence as to what the considerations were for the deeds, first, from Purinton to Lucas, and, second, from Lucas to appellant. Appellant, in addition to his plea of not guilty, set up the statute of limitations of three years, and claimed reimbursement from appellees for the amount of the judgment satisfied by the sale of said land under the order of sale. Appellees, in reply to this claim, and against said judgment and lien, asserted the statute of limitation of two, four, and ten years. The cause was tried without a jury, but no conclusions of law and fact were filed. Appellees, through a quitclaim deed, showed title in themselves from Odell, the grantee and defendant in the original judgment.

The title of appellant depends for support on the judgment rendered in Montague County, and the sale made thereunder in Clay County.

Either the judgment or the sale must be declared void, as contradistinguished from voidable, in order to sustain the judgment appealed from. Our conclusion is, that the judgment can not be so declared. Many cases hold that a person who invokes the protection of a judgment rendered against a nonresident on attachment and publication proceedings must show affirmatively by the record that everything necessary to the jurisdiction was actually and rightly done. Other cases hold that the same presumptions will be indulged in support of such a judgment as where there has been personal service. The latter rule has been adopted by the Supreme Court of this State. Stewart v. Anderson, 70 Texas, 588; Treadway v. Eastburn, 57 Texas, 209; Lawler v. White, 27 Texas, 250; Black on Judg., sec. 281.

We will therefore presume that the sheriff of Montague County followed the command in the citation, and published it in the newspaper of the nearest county, because there was no newspaper published in Montague, in the absence of proof to the contrary; and also that the requisite number of publications was made, though the return did not give the dates, but only stated that it had been published the four successive weeks before return day in the specified newspaper published in Cooke County.

The failure to file a statement of facts after the court had obtained jurisdiction by attachment, and rendered judgment on service by publication, could not render the judgment void. This provision of the statute must have been intended to secure to the nonresident defendant the benefit of a review of the judgment in a direct proceeding. The law which prescribes the venue in suits against nonresidents seems to have been introduced with the Revised Statutes. We conclude, therefore, that appellees' objections to the Montague judgment can not avail them on a collateral attack.

The question raised as to the alleged invalidity of the sale is more difficult of solution. Appellees insist, that at the date of the sale, September, 1874, Wichita County, then unorganized, was not under the jurisdiction of Clay County, and hence that the sale by the sheriff of that county of land situated in Wichita must be held void, on the authority of those cases which hold that an execution sale of land made at any other place than the door of the court house of the county where the land is situated is a nullity. Their theory is, that as a result of an act of the Legislature passed in February, 1874, amending the thirteenth section of the Act of August 10, 1870 (whereby Wichita, with other unorganized counties, had been attached for judicial purposes to Montague County), Wichita was left unattached for judicial purposes to any organized county, and that therefore it fell back to the jurisdiction of the county out of whose territory it had been originally created, and that the parent county was other

than Clay. We are cited in support of this view to those cases which hold, that when a new county is created out of the territory of an organized county, it remains, to all intents and purposes, a part and parcel of the parent county until it is organized, or at least till the Legislature attaches it to some other county or district; and also to those decisions in which the expressions contained in the opinions indicate that this rule should be extended to cases where an unorganized county has been once attached to an organized county and the act attaching it has been repealed without attaching it to any other county. Lumpkin v. Muncey, 66 Texas, 311, and cases there cited; Alford v. Jones, 71 Texas, 519; Baker v. Beck, 74 Texas, 562; Merrill v. Roberts, 64 Texas, 445.

The reason of the rule adopted in these cases is, in substance, stated to be, that every citizen is entitled to the benefits of civil government; and where there is no express law to the contrary, he may look to the courts and officers of the old county for protection till the new one is organized. Following the rule laid down in these cases, we have endeavored to trace the legislative history of Wichita County; and, with the facilities at our command, have been unable to find where it was ever carved out of the territory of an organized county. The present territory of Wichita County seems, originally to have been included in the Fannin Land District, and subsequently, to-wit, by the Act of 1854, in the Cooke County Land District. Sayles' Early Laws, art. 2422. In the year 1856 Young County was created, with a territory attached for judicial purposes which included the present area of Wichita. Ib., arts. 2519, 2559. The succeeding Legislature, on the 24th day of December, 1857, created the counties of Montague and Clay (Ib., 2663, 2664), and on the 1st of February, 1858, the county of Wichita. Ib., 2705. In the act creating the county of Clay a territory was attached thereto for judicial and general purposes which included the present area of Wichita County. Ib., art. 2664. In the act creating Wichita and many other counties we find this provision: "That until attached by law to some judicial district or districts, each of said counties shall be attached, for judicial purposes, in matters pertaining to the jurisdiction of the District Court, to the nearest county in which the District Court may be held." By an act passed in 1860, Wichita, with other counties, was attached to Montague for judicial purposes, with the provision that upon the organization of Clay County they should belong to Clay. Ib., art. 2883. This law was substantially re-enacted in 1866. Acts 1866, p. 94. By an act approved July 2, 1870, districting the State into judicial districts, Wichita and other unorganized counties were attached to the Twelfth Judicial District for judicial purposes, which district was composed of Montague and other counties. Acts 1870, p. 21. By an act approved August 10, 1870, fixing the times for holding District Courts in the several districts, in its thirteenth section,

which fixed the time for the courts in said Twelfth District, it was further provided that for judicial purposes Clay, Wichita, and other counties should be attached to Montague; and in the last section all laws and parts of laws in conflict with said act were repealed. Ib., pp. 53, 59. It appears that in 1873 Clay County was organized; and in February, 1874, said thirteenth section of the Act of 1870 was amended by the substitution of a new section, which fixed the time for holding courts in the several counties of the Twelfth Judicial District, including the county of Clay, but did not attach the counties previously attached, including Wichita, to any organized county. Acts 1874, p. 7.

It seems that when Clay County was organized it was the nearest county to Wichita in which a District Court was held, and that prior thereto Montague had been the nearest county. It seems also that the first Legislature which assembled after Clay County was organized, as well as the judge of the Twelfth Judicial District and the county officers in that section of the State, must have construed the previous legislation as placing the territory of Wichita County under the jurisdiction of Clay upon the organization of the latter; and we are not prepared to say that this construction was wrong.

It is true that our Court of Appeals, in 1876, in the case of Holden v. The State, 1 Texas Court of Appeals, 234, in an elaborate and plausible opinion, held that the Act of 1870 repealed the Act of 1866, by which it was provided that upon the organization of Clay County, Wichita and other counties should belong to Clay. We, however, doubt the correctness of that decision. The first ground upon which it was rested is, that as the Act of 1870 contained a repealing clause of all conflicting legislation, there was an express repeal, because the Act of 1866 only attached Wichita and other counties to Montague temporarily, till the organization of Clay, while the attachment of these and other counties to Montague by the Act of 1870 was apparently permanent. It seems to us that in both cases only a temporary status was intended to be effected, and that there was no conflict between the two acts. The other ground is, that there was an implied repeal, because the Acts of 1870 were subsequent statutes, revising the whole subject matter of the former one, and evidently intended as a substitute for it. The two Acts of 1870, districting the State and fixing times for holding courts under the Constitution of 1869, were evidently substitutes for the two similar acts of 1866, but the Act of 1866 in question was not one of these. Its scope was limited to the one purpose of attaching said counties. The doctrine of repeal by revision, even where there is no repugnance, is well settled, and is rested upon the presumption of a complete treatment of the subject embraced; but it seems also to be laid down as a part of this doctrine, that if the revising act (as in this instance) contains an express repeal of all inconsist-

ent acts and parts of acts, there is an implication that if there are parts of former acts not embraced in the new act and not inconsistent, they are not repealed.    South. on Stat. Const., secs. 154, 155; Lewis v. Stout, 22 Wis., 225; Gaston v. Merriam, 33 Minn., 271; 22 N. W. Rep., 620–621.    As repeals by implication are not favored, in view of the inconvenience and litigation which seem to have resulted from the ruling, we doubt if any repeal of that part of the Act of 1866 which provided for the attachment of Wichita to Clay upon the organization of the latter should ever have been implied.

It will be noted that the Act of 1874, amending the thirteenth section of the Act of August 10, 1870, left untouched the Act of July 2, 1870, which, among other things, contained the provision attaching Wichita for judicial purposes to the Twelfth District; unless, indeed, it should be held that that provision was so far rendered inoperative as to be repealed.

Without announcing any definite conclusions on the repealing force of the acts of 1870 and 1874, we think that, beginning with the Seventh Legislature, which created the Clay territory, and out of this territory Wichita County, providing in the very act creating the county, by a general saving clause, for its attachment to the nearest organized county, if not elsewhere attached, there runs through the several enactments on the subject a legislative purpose that Wichita County, until organized, should fall under the jurisdiction of Montague and Clay in succession as the nearest organized counties; and construing this legislation as a whole, we conclude that at the date of the sale the territory of Wichita was subject to the jurisdiction of Clay.

If, however, it should be held that Wichita was not attached to Clay or any other organized county, it being without a parent county (unless, indeed, Clay should be deemed to stand in loco parentis), we conclude that the District Court of Montague County, having obtained jurisdiction of the property in controversy by a proceeding substantially in rem, had the power, in order to execute the decree of foreclosure, to designate some officer to make the sale at the time, place, and in the manner usual in foreclosure sales in this State; and that the sale made by the sheriff of Clay County, in accordance with the order of sale provided for in the decree, was not void, as would be an ordinary execution sale made in violation of a mandatory statute.

These conclusions have not been reached without hesitation, but until we can point to a place other than Clay County where the sale was directed by law to be made—and upon this subject appellees have furnished us no information—we are unwilling to declare it void.    It seems to us that the principle announced in the cases which sustain the jurisdiction of the parent county, where there is no provision for jurisdiction elsewhere, should have application here.

It is therefore concluded that the judgment of the court below should be reversed, and that judgment should be here rendered for appellant

*Reversed and rendered.*

Delivered November 15, 1892.

A motion for rehearing in this case was overruled.