## DE GUERRA et al. v. DE GONZALEZ et al. (No. 6582.)

(Court of Civil Appeals of Texas. San Antonio. June 8, 1921. Rehearing Denied June 24, 1921.)

1. **Deeds ☞42—Description sufficient, if true location of land may be ascertained thereby.**

A description of land in a judgment or conveyance is sufficient, if by it the true location of the land may be ascertained, and if it contains an erroneous or false call or designation or description, or other detail, and by omitting or disregarding such there remains sufficient description by which the land may yet be identified and located, the judgment or conveyance is effective.

2. **Mortgages ☞494 — Description locating land on the ground held sufficient, although part of it erroneously recited to be in named county.**

Where a foreclosure judgment described the land to be sold with certainty, but recited that it was all situated wholly or partly in one county, whereas in fact, after a division of counties, certain tracts were wholly in another county, the description was nevertheless good.

3. **Mortgages ☞502—Clerk of county district court held not authorized to issue order of sale in foreclosure, requiring sheriff of one county to sell lands in still another county.**

In view of Vernon's Sayles' Ann. Civ. St. 1914, arts. 2000, 3727, the clerk of a county district court was without authority to issue an order of sale in foreclosure, requiring the sheriff of another county to sell lands lying in still another county.

4. **Mortgages ☞507—Sheriff's authority as to foreclosure sale of lands lying within and without county after division stated.**

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 3727, providing that an order for sale under foreclosure may be issued to a county where the property or some part thereof is situated, the sheriff of a named county held entitled to make sale of tracts of land, part of which only were within the county after readjustment of the county lines subsequent to the execution of the mortgage, but was not authorized to sell lands lying wholly in the new county.

5. **Trespass to try title ☞32—Offer of reimbursement held condition precedent to recovery.**

In trespass to try title, under a claim that a foreclosure sale was invalid, because part of the lands were improperly described as being in a named county, it was necessary for plaintiffs to plead a willingness to make reimbursement.

**6. Appeal and error ⊕⇒1177(1)—Remand held necessary to permit plaintiff to amend.**

Where plaintiff in trespass to try title should not have been permitted to recover without offering to reimburse defendant, who claimed under mortgage foreclosure, the court on appeal will not render judgment for defendant, but will remand, that plaintiff have opportunity to amend and the court to adjust the equities.

**7. Mines and minerals ⊕⇒81 — Lessee held charged with notice of defect in record title of lessor.**

In trespass to try title, wherein an oil company intervened as an innocent purchaser for value without notice, *held*, that the oil company was charged with notice of proceedings under which its lessor obtained title on foreclosure, and of any invalidity in the order of sale therein.

Appeal from District Court, Jim Hogg County; Hood Boone, Judge.

Action by Manuela Barrera de Gonzalez and others against Virginia Cox de Guerra and others in trespass to try title. Judgment for plaintiffs, and defendants appeal. Reversed and remanded.

James B. Wells, of Brownsville, and T. C. Mann, of Laredo, for appellants.

B. A. Greathouse and Don A. Bliss, both of San Antonio, for appellees.

SMITH, J. In 1908 Jesus Guerra Gonzalez was the owner of about 25,000 acres of land situated in Starr county. In November of that year he incumbered the land with a deed of trust to secure his note to Mary J. Luby for $23,000, and in 1910 further incumbered it with a deed of trust to secure his note to Francisco Laborde for $10,000. In 1915 he executed a third deed of trust to secure the payment of a second note to Laborde for $1,807.27; also in 1915 one A. Costerveen secured a judgment against Gonzalez in the county court of Starr county for $712.87 and $11.50 costs, and abstract thereof was filed in said county, by which the judgment lien was fixed against the lands mentioned. As will be seen, Luby held the first lien, Laborde the second, and Costerveen the third. After the execution of the deeds of trust, and before foreclosure, the new county of Jim Hogg was created out of Starr county, and in this way some of said tracts of land were cut off, either wholly or in part, into the newly created county.

On August 18, 1916, Mary J. Luby brought suit in Duval county, where the Luby note was made payable, to recover the amount of her note and foreclose the deed of trust lien to secure the same. In her petition she described the lands in detail as they were described in her deed of trust, but alleging, in general terms that some of them were embraced in the new county. She impleaded Laborde, who answered, setting up his notes and liens, and prayed for judgment and foreclosure, giving the same description of the lands as were given in his deed of trust, which was the same as in the Luby deed of trust and petition, except as to one tract not included in the Luby transaction. Laborde further alleged that some of the lands were "perhaps" embraced in Jim Hogg county. Costerveen intervened, setting up his judgment lien. In this attitude the cause came on for trial. Gonzalez defaulted, but the trial proceeded, resulting in a judgment for Luby, Laborde, and Costerveen for the amounts of their respective debts, aggregating $62,934.85, plus $85 costs, and for foreclosure of their respective liens, and directing order of sale to issue "as provided by law." In this judgment the lands were described in detail as in the deeds of trust and pleadings of the parties. There was no appeal from this judgment.

In due course the district clerk of Duval county issued an order of sale, directed to the sheriff of Starr county, requiring him to sell all the lands, which were again described in detail as in the deeds of trust, pleadings of the parties, and judgment of the court, and their location given as in Starr county. In pursuance of this order the sheriff of Starr county advertised and sold all the lands to appellants on April 3, 1917, for the exact amount of the judgment, $62,934.85, plus $85 costs, and the proceeds of the sale were applied to the payment of the Luby, Laborde, and Costerveen debts and the satisfaction of their liens in full. On the same day the sheriff executed the usual sheriff's deed, conveying the lands to appellants, describing them again in detail as they had been described in the deeds of trust, pleadings of the parties, judgment of the court, and order of sale, still giving their location as in Starr county. Thereupon appellants went into possession of the lands, and have been in possession ever since. Since then appellants have paid $2,600 taxes accruing against the land, and have placed improvements thereon of the value of $350.

Jesus Guerra Gonzalez, who owned the lands in community with Manuela Barrera de Gonzalez, his wife, died intestate on January 28, 1920, and on April 16, 1920, the latter, as survivor, and their children, as heirs at law of Jesus and Manuela, brought this suit in the form of trespass to try title against appellants, to recover title and possession of such tracts of the described lands as were situated wholly or partly in Jim Hogg county, and for rents for the use thereof. The Texas Company was impleaded as a party defendant, as the holder of an oil and gas lease on all the lands; this lease having been made to that company by appellants Guerra.

Appellants Guerra answered, pleading not guilty, and, setting up the facts, contended that by reason of their purchase at the sheriff's sale they obtained title to the property; that they were innocent purchasers, etc.; that the land was the community property of Jesus and Manuela Gonzalez, and as such was subject to the payment of the debts of such community; and that appellants, having paid said amounts of $62,934.85 and costs, thereby paid said community debts and discharged the liens lawfully given to secure such debts, and, having paid said $2,600 taxes lawfully accruing against the lands, the appellees could not recover title to the property so freed from said debts, charges, and liens without reimbursing appellants for the amounts so paid out. Appellees filed no reply to this pleading, and did not pay or tender to appellants the amounts the latter had paid out, or any part thereof, in their pleadings or otherwise, but proceeded with the trial on their original petition in trespass to try title. The cause was tried before the court without a jury, and resulted in a judgment for appellees, Manuela Gonzalez and her children, against appellants Guerra, for title and possession of the lands sued for, and for rents in the sum of $6,929.27, and for appellants for $350 improvements, and $259.34 taxes paid. The cancellation of the Texas Company lease was also decreed. There was an agreed statement embracing many of the facts, and the court filed written findings of facts and conclusions of law.

It should be said at the outset that no question is raised affecting the jurisdiction of the district court of Duval county in the suit to foreclose the liens against the property involved, and to order the sale thereof to satisfy the judgment there rendered against Jesus Guerra Gonzalez. That court had jurisdiction of the parties and of the subject-matter, and there was no appeal from that judgment. The contentions of appellants are embraced in 19 assignments of error, but the questions in the case may be grouped under 3 main issues: (a) The sufficiency of the description of the lands directly involved; (b) the validity of the sale by the sheriff of Starr county of the lands lying wholly or partly in Jim Hogg county; and (c) the right of appellees to recover such lands without reimbursing, or offering to reimburse, appellants for the amounts the latter paid in discharging those lands from the debts, liens, and charges fixed thereon by Jesus Guerra Gonzalez. These questions will be discussed in their due order.

[1] 1. When the liens were created, all the lands were situated wholly within Starr county. On July 1, 1913, when Jim Hogg county was created, all of some of the tracts of the land, and other tracts in part, were cut out of Starr county and into Jim Hogg county. The deeds of trust, being executed prior to the creation of the new county, of course described the lands as all lying in Starr county. The descriptions of these lands in those instruments were very full and complete in every reasonable detail, giving as to each tract the names of the original grantees and patentees, the date, volume, and number, and record reference of the patent, the number of acres, the certificate number, survey number, and other record references whereby the descriptions by metes and bounds were ascertainable. In the foreclosure proceedings, these same descriptions were followed in the pleadings of the parties, in the judgment, order of sale, notice of sale, and sheriff's deed. In this way, the lands were all described as being situated in Starr county; whereas the particular tracts herein sued for were situated wholly or in part in Jim Hogg county. Upon the trial of this cause, however, official maps and other evidence were introduced, showing the location of the lands with reference to counties, from which it appears that by the description in the foreclosure proceedings and sheriff's deed the lands in controversy are readily located and identified. Under the rule now well established in this state, a description of land in a judgment or conveyance is sufficient, if by it the true location of the land may be ascertained, and if it contains an erroneous or false call or designation or description, or other detail, and by omitting or disregarding such there remains sufficient description by which the land may yet be identified and located, the instrument, judgment, or conveyance is effective. And so, if by disregarding or rejecting the reference to Starr county, as to those lands not lying in that county, the description is sufficient to locate them in Jim Hogg county, as they are in fact located, then the descriptions in the foreclosure proceedings and sheriff's deed are sufficient and valid. West v. Houston Oil Co., 46 Tex. Civ. App. 102, 102 S. W. 927, and authorities there cited.

[2] 2. Appellees take the position in their briefs that there was in fact no foreclosure by the district court of Duval county upon the lands lying in Jim Hogg county; that it was not intended by that court to foreclose on the Jim Hogg county lands, and if such was the purpose it was not effected. This was the view, also, of the trial court, which expressly so held in its conclusions of law. This theory of appellees and the trial court seems to be predicated upon the fact that, although in the pleadings and judgment of foreclosure the lands were all specifically described in detail, tract by tract, they were nevertheless all described as lying in Starr county, and none were stated to be in Jim Hogg county, thereby negativing the purpose or effect of any foreclosure of the lands actually situated in the latter county.

But the contention in our opinion is without merit. In the judgment foreclosure was expressly decreed upon each and every tract of land included in the deeds of trust and pleadings, each such tract being specifically and minutely described, so that there could be no sort of mistake or uncertainty about the lands thus foreclosed upon, notwithstanding the error of locating some of them in Starr county, when as a matter of fact the description in detail showed conclusively that they lay wholly or partly in Jim Hogg county. This false note in the description, which does not control, but is overcome and neutralized by the description in detail, which is definite, certain, and does control, will be disregarded and rejected, and the true description given effect. This true description identifies and locates the land as it actually lies, some of it wholly in Starr county, some of it wholly in Jim Hogg, and some of it partly in both. In our opinion, the judgment effectually decreed foreclosure upon all the lands in both counties, and we so hold. In truth, the agreed statement of facts, executed by the parties and approved by the trial court, embraces this very conclusion.

This brings us to the next step in the foreclosure proceedings, the issuance by the clerk of the district court of Duval county of an order of sale directing the sheriff of Starr county to sell all the lands thus foreclosed upon, including those tracts lying wholly or partly in Jim Hogg county. It will be observed that by the terms of the decree of foreclosure the clerk was directed to "issue an order of sale, as provided by law in such cases, for the sale of the lands herein described, to satisfy the judgments herein rendered," etc. Appellees contend that this provision relegated the clerk to article 2000, Vernon's Civil Statutes, and that under this statute the clerk had no authority to issue to the sheriff of Starr county, as he did, an order to sell the lands lying wholly or partly in Jim Hogg county, and that the act of the clerk in issuing such order was without authority and void, in so far as it directed the sale of the Jim Hogg county lands. Article 2000 provides that:

"Judgments for the foreclosure of mortgages and other liens shall be that the plaintiff recover his debt, damages and costs, with a foreclosure of the plaintiff's lien on the property subject thereto, and except in judgments against executors, administrators and guardians, *that an order of sale shall issue to the sheriff or any constable of the county where such property may be.* * * *" (Italics ours.)

We also quote article 3727:

"Where the execution, or any writ in the nature thereof, requires the sale or delivery of specific real or personal property, it may be issued to the county where the property, *or some part thereof,* is situated." (Italics ours.)

Appellees cite a number of decisions in support of their contention that the clerk was without authority to issue an order of sale to the sheriff of Starr to sell the lands lying wholly ·in Jim Hogg county, those directly in point being Alred v. Montague, 26 Tex. 733, 84 Am. Dec. 603, Casseday v. Norris, 49 Tex. 617, and Terry v. O'Neal, 71 Tex. 595, 9 S. W. 673; and in all of those cases it is so held.

[3, 4] Appellants cite the cases of Menard v. McDonald, 52 Tex. Civ. App. 627, 115 S. W. 64, Buse v. Bartlett, 1 Tex. Civ. App. 335, 21 S. W. 52, and Moore v. Blagge, 91 Tex. 151, 38 S. W. 979, 41 S. W. 465; but those decisions relate to partition suits, which are governed by different statutes and rules relating peculiarly to such proceedings, and which do not, in our opinion, control here. Both article 2000 and article 3727 expressly provide, in the one that the order of sale shall issue to the sheriff of the county in which the property is situated, and in the other that such order may issue to the county "where the property, or some part thereof, is situated." Public officers, such as clerks and sheriffs, derive their authority alone from the law which prescribes their powers and duties, and their acts in excess of this authority will not be permitted to bind any one, and more especially where by such acts one may be divested of his property. It is quite clear to us that under the articles mentioned and under the decisions construing them, as well as under the decree of foreclosure, the clerk of the Duval county district court was without any authority to issue an order of sale requiring the sheriff of Starr county to sell lands lying wholly in Jim Hogg county, as was the sheriff without authority to sell such lands, by virtue of that order or otherwise. But we are of the opinion that under the decree and under the law the clerk did have authority to issue, and the sheriff of Starr county had the authority to execute, the order requiring the sale of the lands lying partly in Jim Hogg and partly in Starr county. The decree of foreclosure clearly included those lands, and article 3727 plainly provides that:

"Where the execution, or any writ in the nature thereof, requires the sale or delivery of specific real or personal property, it may be issued to the county where the property, or some part thereof, is situated."

Appellees contend that article 2000, relating as it does to "judgments for the foreclosure of mortgages and other liens," and providing that "an order of sale shall issue to the sheriff of the county in which" the property foreclosed upon "may be situated," is special in its nature, is exclusive of other remedies, and should control over general statutes, such as article 3727, which provides in effect that, where the property lies part-

ly in one county and partly in another, the order of sale may issue to either county. We do not agree with the contention. Article 2000, enacted in 1846 (Laws 1846, p. 394), made no provision specifically applicable to the sale of lands lying partly in two counties. The venue of suits to foreclose deeds of trust and mortgages, and otherwise affecting the title to lands lying partly in two counties, was fixed in either county. Subsequently it was provided that deeds, deeds of trust, mortgages, and other instructments affecting the title to such lands, and lis pendens notices, might be filed in the county where the land, or any part thereof, was situated. The exercise of such venue, and the registration of such instruments in either county, was made just as binding upon the owner of the land as if the instruments were recorded and suits to foreclose filed in both counties touched by the land. No good reason is conceived why the operation of this machinery for enforcing liens on lands lying partly in two counties should not be extended, so as to include a forced sale of land embraced in the lien and subject to the venue so fixed.

Obviously, these venue and registration statutes were enacted in order to avoid recording the lien, and instituting suits, in both counties, otherwise made necessary where a tract of land, in a solid body, happened to lie across the line separating two counties. Since registration in either county was made sufficient, and the venue fixed in either county, would not consistency require also a provision that the sale resulting from such registration and litigation could be made in either county? We think these considerations must have induced the Legislature to provide, as it did in article 3727, that an order for the sale of specific property may issue to the county in which such property, or a part thereof, is situated. The only case in mind in which it is held that such order of sale must issue to both counties is that of Ilred v. Montague, 26 Tex. 733, 84 Am. Dec. 603, which was decided before the enactment of article 3727, and hence is not now applicable. On the other hand, in Miller v. Land Mortgage Co., 14 Tex. Civ. App. 309, 37 S. W. 181, in a clear and pointed opinion by Chief Justice Tarlton, it is expressly held that, where the land upon which foreclosure is decreed lies partly in two counties, article 3727 applies, and the sheriff of either county may sell. The language of the opinion in that case is so apt, and the facts being identical with the facts in this case, we quote at length from that opinion:

"The sole contention of plaintiff in error which we deem it necessary to pass upon consists in the proposition, urged by him, that the sale of the 60 acres in suit, lying in Denton county, out of a tract of 100 acres, of which the remaining 40 acres lie in Dallas county, is void, on the ground that the writ under which he acted could not empower the sheriff of Dallas county to sell land situated in Denton county. We overrule this proposition, as applied to the facts in this case. Article 2279 [present article 3727], Sayles' Revised Statutes, provides that, 'where an execution, or any writ in the nature thereof, requires the sale or delivery of specific real or personal property, it may be issued to the county where the property or some part thereof is situated.' Here a writ, viz. an order of sale, in the nature of an execution, required the sale of specific real property, a part of which was situated in Dallas county, to which the writ issued. The conditions of this article are literally fulfilled in this instance.

"The rule invoked by the plaintiff in error applies to the case of an ordinary execution, resting upon a purely moneyed judgment. Between such an execution and an order of sale issued upon a decree foreclosing a lien upon a specific tract of land, the distinction seems to us to be obvious; the proceeding in the latter case being substantially in rem. Buse v. Bartlett, 1 Tex. Civ. App. 335. It is manifest that great hardship might be wrought upon a debtor in an ordinary judgment, should his realty be seized and sold in a county foreign to its location. Hence the law, as indicated in the decisions of our Supreme Court cited by plaintiff in error, wisely forbids such a sale. But where a vendor's lien is foreclosed upon a specific tract of land, a part of which lies in one county and a part in another, the two portions being separated simply by the line consisting in the county boundary, it is not perceived how any hardship could be visited upon the defendant in the suit foreclosing the lien and ordering a consequent sale, all growing out of a contract to which he was a party from its inception. In any event, we are clearly of the opinion that the sale by the sheriff in this instance comes within the letter and the spirit of the provision above quoted. It follows that the title of the defendant Miller was divested by the foreclosure proceedings and the sale accordingly had, and that these were sufficient to exclude him from recovery in this action of trespass to try title."

We hold, then, that the order of sale issued by the district clerk of Duval county to the sheriff of Starr county, and the sale made thereunder by said sheriff, was valid in so far as it included the lands lying wholly, or in part, in Starr county, but void as to the lands situated wholly within Jim Hogg county. It is conceded that the following tracts directly involved are situated wholly in Jim Hogg county; Surveys 121, 639, 14, and 11, aggregating 1,541 acres. In the agreed statement of facts, which was adopted by the trial court as correct, it is recited that survey 635 lies in a solid body, of which 527 acres are situate in Jim Hogg county and the balance of the tract in Starr county, and that the Las Cuevitas grant lies also in a solid body, of which 7,000 acres are situate in Jim Hogg county and the balance in Starr county. We therefore specifically hold that the sale to appellants by the

sheriff of Starr county of surveys 121, 639, 14, and 11 was void, and conveyed no title in said lands to appellants, but that the sale to appellants by ·said sheriff of survey 635 and of the Las Cuevitas grant was valid, and conveyed to appellants the title to the whole of both tracts.

3. It is conceded that appellants bought in all of the land foreclosed upon, and paid $62,934.85 therefor, plus $85 costs, in cash, and that this money was applied to the payment of the debts lawfully chargeable against those lands and in satisfaction of the liens foreclosed thereupon, and that by this means all of said debts were fully paid and said liens entirely satisfied. It is further conceded that since such purchase appellants have paid $2,600 taxes lawfully accruing against the lands, and placed improvements thereon. This raises the question of whether or not appellees are entitled to recover any part of the lands, without reimbursing or offering to reimburse appellants for their outlay in discharging the debts, liens and taxes lawfully chargeable against the lands. This question is too well settled in this state to admit of discussion. Beginning in 1849, with Howard v. North, 5 Tex. 290, 51 Am. Dec. 769, it is held in an unbroken line of decisions that in cases such as this the purchaser at an invalid or void foreclosure sale—

"should not be compelled to restore possession, until the purchase money which he had paid for the benefit of plaintiffs, and by which the judgment against them had been discharged, should be reimbursed, and he indemnified." Halsey v. Jones, 86 Tex. 488, 25 S. W. 696; Duke v. Reed, 64 Tex. 705; Northcraft v. Oliver, 74 Tex. 162, 11 S. W. 1121; French v. Grenet, 57 Tex. 273; Gibson v. Oppenheimer, 154 S. W. 700; Vanderwolk v. Mattaei, 167 S. W. 304; Smithwick v. Kelly, 79 Tex. 564, 15 S. W. 490; Andrews v. Richardson, 21 Tex. 296; Morton v. Welborn, 21 Tex. 772; Walker v. Lawler, 45 Tex. 533.

[5, 6] In this case appellees simply brought an action in trespass to try title to recover title and possession of the lands lying wholly or partly in Jim Hogg county, and for rents for the use thereof. Appellants answered, setting up the facts very fully, and claimed title to all the lands, and in the alternative for the return of the purchase money. Appellees made no reply to this pleading, but stood upon their original demand for the title and possession, without offering to reimburse appellants for discharging the debts of appellees' ancestor chargeable against the lands. The case was tried in this attitude, and judgment was for appellees for the lands lying wholly or partly in Jim Hogg county, and for $6,929.97 rents, while appellants were allowed $350 for improvements and $259.34 for taxes paid. In rendering judgment for appellees the court erred, because in no event would appellees be entitled to recover, except for such of the lands as were situated wholly in Jim Hogg county, and not for them until they reimbursed appellants for that portion of the purchase money, taxes paid, and improvements made, chargeable to the lands so recovered. It was the duty of appellees, when appellants answered and set up the facts of their purchase of the lands and discharge of the debts of appellees' ancestor, to plead their willingness to reimburse appellants, and, having failed to make such tender, they should have been denied any recovery in the court below, or, as was said by Mr. Justice Gaines in Railway v. Blakeney, 73 Tex. 180, 11 S. W. 174, where this same question of pleading was involved:

"When the defendant pleaded the facts they [plaintiffs] should have made an offer to refund. Having failed to do this, upon the proof of the facts alleged in the answer, the court should have given judgment for the defendant."

This rule is also sustained by Vanderwolk v. Mattaei, supra, and Dixon v. National Co., 40 S. W. 541. The practice, however, in cases such as this, where the plaintiff has failed or declined to amend and offer to do the equity required of him, is to remand the cause and give him an opportunity to so amend, in order that the lower court may then adjust the equities in accordance with the case as made. Bailey v. Block, 104 Tex. 101, 134 S. W. 323. Accordingly, the judgment of the court below must be reversed, and the cause remanded, for further proceedings not inconsistent herewith.

[7] The Texas Company insists that it was an innocent purchaser for value without notice of appellees' claims, and that accordingly its oil and· gas lease upon the lands in controversy should in no event be disturbed. The trial court found against that contention, and we think correctly so. The Texas Company was charged with notice of the proceedings under which the Texas Company's lessor obtained title, and that record disclosed the invalidity of the order of sale and sale made thereunder to said lessor. It was within the power of that company to determine from the face of the process whether or not the clerk had authority to order, and the sheriff the authority to make, the sale to De Guerra, and if the company failed to correctly exercise this power it cannot complain. Bailey v. Block, supra. The Texas Company's lease should be canceled in so far as it covers the lands, if any, the title to which may be ultimately restored to appellees.

Reversed and remanded.

### On Motion for Rehearing.

Appellees complain somewhat vehemently of slight inaccuracies in the original opinion of this court relating to certain immaterial matters of fact, as follows:

1. It was said in the original opinion that Mary J. Luby, in her suit in the district court of Duval county, described the lands there involved "in detail as they were described in her deed of trust, but alleging in general terms that some of them were embraced in" Jim Hogg county; whereas, she in fact described the lands as all having been originally situated in Starr county, but now situated in Jim Hogg county, and asked to be allowed to make proof of the fact.

2. It was said in the original opinion that in the Duval county district court Francisco Laborde alleged that "some of the lands were 'perhaps' embraced in Jim Hogg county." Appellees challenge the accuracy of this statement. The precise allegation of Laborde on this point was that the lands were situated "perhaps partly in the since created county of Jim Hogg, in the state of Texas, as the facts may be."

3. It was said in the original opinion that the sheriff of Starr county sold all the lands for the "exact amount of the judgment, $62,-934.85, plus $85 costs." Appellees insist that the record does not show the payment by appellants of $85 in costs. It is true, we find upon careful inspection that the record does not show the payment of the sum of $85 costs; it merely shows the payment of $62,934.85 "and all costs." It was alleged by appellants that the costs amounted to $85, but whether or not this allegation was accurate was not shown; it being neither disputed nor proven.

4. It was said in the opinion that it was conceded that appellants had paid $2,600 taxes on all the 25,000 acres of land involved. This amount was alleged by appellant to have been paid, but no showing was made as to the accuracy of this allegation. It was conceded that appellants had paid $259.34 taxes on the 9,000 acres recovered by appellees. The fact of the payment of $2,600 on the whole of the 25,000 acres was neither admitted nor challenged.

5. It was said in the opinion that the deeds of trust described the lands as all lying in Starr county. A part of one tract, which was not in controversy here, was described as lying partly in Starr and partly in Zapata county. The fact was purposely omitted throughout the opinion, because it could not possibly have any bearing upon the case, and references to and discussion of it would merely incumber and confuse the decision.

6. It was said in the original opinion that the agreed statement of facts showed that the "Las Cuevitas grant lies also in a solid body, of which 7,000 acres are situated in Jim Hogg county, and the balance in Starr county." Appellees say this statement "is an entire misapprehension of the record." The agreed statement, on this point, recites that "the Las Cuevitas grant lies in a solid body, the great bulk thereof being situated in Jim Hogg county, but a part being situated in Starr county, the dividing line between said counties crossing said * * * tract, so that a part of said tract is situated in Jim Hogg county, and a part in Starr county." The statement that 7,000 acres of this grant lay in Jim Hogg county was contained in appellees' trial petition and brief, and was not challenged; but no affirmative agreement seems to have been made thereon.

7. Appellees urge that it was said in the original opinion that appellants set up the facts very fully, and claimed title to all the lands, and in the alternative for the return of the purchase money. Appellees claim this statement is "not correct" and is "misleading." The pleadings and contentions of the parties were fully and correctly stated in the original opinion, however, and we will not disturb that statement. We should state here, however, that while we are quite clear that by pleading the facts appellants placed upon appellees the burden of offering to do equity, it is well, in view of another trial, for both parties to replead their respective cases, so that the trial court may there adjust all the equities between the parties.

With these corrections and explanations, appellees' motion for rehearing is overruled.

---

⚫For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes