### HOPPER et al. v. TANCIL et al.[*]
(No. 1063–4695.)

Commission of Appeals of Texas, Section A. Feb. 29, 1928.

1. Vendor and purchaser ⬮⇒229(6, 7)—One knowing he was purchasing land in litigation and was indulging in "speculation" was not "innocent purchaser" without notice of equitable title of another.

One informed by party inducing him to purchase land that land was in litigation, and that it was a speculation, "speculation" meaning that purchaser is getting property for much less than it is worth, and that money is invested on risk of loss on chance of unusual gain, and that proceeds or returns are conjectural because undertaking is out of ordinary course of business, was not an "innocent purchaser" without notice as against equitable title of another.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Innocent Purchaser; Speculate—Speculation.]

2. Appeal and error ⬮⇒854(5)—If court's action in entering judgment was correct on any theory, judgment should be affirmed.

If trial court in withdrawing case from jury and entering judgment was correct on any theory, judgment should be affirmed, whatever reason was assigned therefor, or whether any reason was assigned therefor.

3. Vendor and purchaser ⬮⇒238—If vendor had good title, purchaser was protected, though he had notice of another's equitable title.

If vendor had good title as against equitable title of another, purchaser would be protected, regardless of fact that he bought with notice of equitable title.

4. Executors and administrators ⬮⇒388(5)— Judgment creditor, purchasing at administrator's sale to satisfy judgment, was not "innocent purchaser" as against equitable title of one who had been dismissed from suit.

G., purchasing land at administrator's sale to satisfy indebtedness against estate in form of his judgment and attachment lien, was not "innocent purchaser" without notice as against equitable title of B., who was real owner, and who had been made party to G.'s suit against deceased and holder of record title, but who was later dismissed from suit on G.'s motion, since it will be presumed that, had he made inquiry of deceased and owner of record title, he would have ascertained truth, which was that B. was real owner of land.

─────────────
⬮⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Rehearing denied April 25, 1928.

**5. Covenants** ⬦⟶84—**Grantor, who had held title as security, conveying to grantee at owner's direction, without consideration from grantee, was not liable to grantee on warranty in deed.**

Where one holding legal title to land as security for debt, after payment of debt, conveyed title to B. by direction of L., the real owner, and B. paid no consideration, grantor was not liable to B. on warranty in his deed.

**6. Covenants** ⬦⟶84—**Grantor, not liable to grantee on warranty in deed, was not liable to parties claiming title through grantee who were not innocent purchasers.**

Where grantor was not liable to grantee on warranty in deed because there was no consideration, grantor was not liable to parties claiming title under grantee, where neither of them were innocent purchasers, since they took only such rights and title as grantee had.

Error to Court of Civil Appeals of First Supreme Judicial District.

Trespass to try title by Mabel Tancil and husband against G. B. Hopper and others. Judgment was affirmed by the Court of Civil Appeals (285 S. W. 900), and defendants bring error. Judgment reformed in part, and in all other respects affirmed.

Bryan, Dyess, Colgin & Suhr, of Houston, for plaintiffs in error.

Stevens & Stevens and Ward & Ward, all of Houston, for defendants in error.

CRITZ, J. This suit was originally instituted in the district court of Harris county, Tex. The issues and result in that court are stated in the opinion of the Court of Civil Appeals (285 S. W. 900), and will not be repeated here.

The Court of Civil Appeals in all things affirmed the judgment of the trial court, and the cause is now before this court on two writs of error, the one granted on application of Lucy Brown and the other on application of G. B. Hopper. We shall first consider and dispose of the application of Lucy Brown.

[1] By her first assignment of error and propositions thereunder, Lucy Brown assigns as error the following holding of the Court of Civil Appeals:

"The trial court concluded that the burden of proof rested upon Lucy Brown, as holder of the equitable title, to show that M. R. Kleas had notice of such title and was not a purchaser for value, and that there was no evidence of any probative force raising any such issue. It is thought that the record supports the trial court's conclusion, and that therefore the judgment in this respect must be affirmed. We have duly considered the assignments of error bearing upon this branch of the case, and think that they should be overruled."

We are of the opinion that the Court of Civil Appeals erred in so holding. The record shows that, at the time Kleas purchased this land, N. F. Brown estate was the holder of the legal title, but Lucy Brown held the equitable title. The Court of Civil Appeals holds in effect that there is evidence in the record going to show such to be the fact. It is shown that Kleas purchased from Green, and that Green acquired the title by administrator's deed under proceedings in the county court, and the administration was on the estate of N. F. Brown, deceased. Green sued N. F. Brown during his lifetime, and G. B. Hopper, and he (Brown) filed a general denial. A short time thereafter N. F. Brown died. Green then amended his petition, and sued Lucy Brown, G. B. Hopper, and J. E. Walton, as the administrator of the estate of N. F. Brown, deceased, for $700. Lucy Brown answered, and by proper pleadings requested that Green be required to elect as to whether he would sue her as the undisclosed principal in the case, or N. F. Brown estate, the agent, and, at the conclusion of the evidence, Green dismissed as to Lucy Brown, and thereby elected to hold the agent, N. F. Brown estate. In this case Green had levied a writ of attachment against the 40 acres of land during the life of N. F. Brown, as the property of N. F. Brown and G. B. Hopper, and took judgment foreclosing said attachment against the estate of N. F. Brown. This judgment was duly certified to the probate court for observance by that court. The administrator sold the land to satisfy the indebtedness against the estate in the form of Green's judgment and attachment lien, and Green purchased the land, and paid for the same by crediting his bid against the judgment, and received deed from the administrator. In this state of the record the attachment lien was duly foreclosed and the land sold by order of the probate court in the only way it could have been sold after the death of N. F. Brown, and Green took a good title if he took as an innocent purchaser. This matter will be disposed of later on in this opinion. Thereafter, in July, 1923, Green executed and delivered to Kleas a special warranty deed to the 40 acres of land for a recited consideration of $750. The litigation grows out of the above transaction, and Kleas has asserted title by reason of and under the deed to him from Green, as his immediate source of title. We gather from the record and the testimony of Judge W. H. Ward that the land was in litigation at the time Kleas purchased from Green.

It is shown by the testimony of Judge Ward that he and his wife represented Green in the case against N. F. Brown and the N. F. Brown estate, and therefore he (Ward) must have known all of the salient facts in this case. He testified that he owned a one-third interest in the judgment Green had against the N. F. Brown estate, and that he

represented Green and Mabel Tancil in the suit in the district court. It was shown that Kleas was, at the time he purchased from Green, in the drug business at Port Arthur, Tex., where he also had a Ford agency. It was also shown that Kleas speculated in oil interests, and was a pretty good judge of land and land values, and was probably worth $100,000. While this litigation was pending, Judge Ward's firm wrote a letter to Kleas, telling him:

"That as he very frequently bought things in that line, if he wanted to indulge in a speculation, we represented Mabel Tancil in the case, and we thought this was a good speculation if he wanted to buy this title. I mentioned the Mabel Tancil suit. I did not tell him in what court it was pending, and I don't think I told him it was pending in this county. * * * Mr. Kleas did not come here, neither did he get any attorney to make an examination of the abstract. Mr. Kleas never met Green. He bought it as a speculation, and made no examination of the title. I told him it was a speculation. The letter to him stated that there was a suit pending in behalf of Mabel Tancil for part interest in the property. I did not tell him against whom it was pending; neither did I tell him Lucy Brown was asserting an adverse title."

Judge Ward further testified:

"I think he made a good buy at the amount of money he paid for it."

Judge Ward further testified that in 1912 or 1913 he and Kleas had bought a piece of land together, and that in 1913 or 1914 he had bought another piece of land near Humble, and conveyed a half interest to Kleas. He further testified:

"We are very good friends; have been good friends since I have known him about 15 or 16 years. He is my wife's brother-in-law—my wife's sister's husband."

Judge Ward further testified:

"Mr. Kleas did not write me any letters in response to that. He sent me his check. I have the check here, if you would like to see it."

The check was later introduced in evidence. It was dated Port Arthur, Tex., 7—20—1923, was payable to S. R. Green, was for $750, signed by M. R. Kleas on the First National Bank of Port Arthur, Tex., and indorsed by S. R. Green and Ward & Ward. Judge Ward testified on cross-examination:

"I told Mr. Kleas in the letter that I wrote him that the title had been warranted by Mr. Hopper to Brown for $4,500, and Mr. Hopper was able to protect his warranty. I told him I represented a former wife of Brown, who was claiming a community interest, and that, if she should prevail in the suit, there would be the community interest to Brown which he would obtain by his purchase, and at the same time Hopper's warranty would protect him for any part which he might lose."

Judge Ward further testified:

"I mentioned Mr. Hopper had warranted the land."

Judge Ward further testified:

"It looks like I was trying to make him a whole lot of money on his $745."

As to value, Judge Ward testified as follows:

"My recollection is that there was a well being drilled at that time on the W. L. Edmonson tract, and we had been informed that the well might come in, and my recollection is that we paid either $150 or $200 an acre for it; Mrs. Ward says $132. She probably remembers it better than I do, because she is the best oil speculator in my firm. I have a fair knowledge, I believe, of land values anywhere in this county. In July, 1923, I judge this land was worth about $200 an acre."

From the above quotation, we are not able to say positively whether Judge Ward intended to say that the 40 acres of land in this litigation was worth $200 an acre, or that the land owned by him and his wife in the general trend of the Pierce-Junction oil field was worth $200 an acre. But, at any rate, he was certainly making a comparison, and the general trend of the testimony is to the effect that the land in question was worth $200 an acre. It is certainly not a strained construction to conclude that he was comparing the land in this suit as to value with the other tract.

Hopper testified as follows in regard to the value of the land:

"At the time this contract was made, we valued that land at $150 an acre. I don't think the value would have increased in July, 1923; no oil had been discovered there. I guess on an air line that land is five to six miles from the courthouse. I think that is three-quarters of a mile from the oil field. To the nearest well I think it is northeast, if I am not mistaken. I don't know just exactly that location, but anyway I think it is northeast from Pierce Junction."

It will be seen from the above testimony that, at the time Kleas purchased this land from Green, he had notice in a letter from Judge Ward informing him that the land was in litigation, that he was engaging in a speculation and that, if he did not maintain his title, he had a warrantor in the person of Hopper, who had warranted the land for $4,500. In other words, Kleas well knew, from this letter, that he was buying land in litigation. Also, if this land was worth $150 to $200 per acre, he bought it for from one-eighth to one-tenth of its value. Kleas, without even replying to this letter, closed his eyes to all avenues of information suggested therein, and sent a check for the $750 to pay for this land, when he had notice in the letter itself that

he was engaging in a speculation and that the land was in litigation. He therefore had notice that other parties were claiming it. The district court of the county in which land is located is the usual and ordinary place where such a suit would be pending. Judge Ward and Kleas had married sisters. They were friends of long standing, and Judge Ward presumably knew the facts. Yet Kleas closed his eyes, made no inquiry of Judge Ward, or of his firm, or any one else, made no examination of the district court records, made no reply to the letter, and purchased the land, under these circumstances, by just mailing a check to Ward & Ward, payable to Green, and took a deed that only warranted the title against the lawful claim of every person whomsoever claiming, or to claim the same or any part thereof, by, through, or under Green. We think that the above facts were not only amply sufficient to submit the case to the jury, but that they were amply sufficient, and did, as a matter of law, put Kleas on notice of all the facts that he would have ascertained had he made inquiry, and that, had he made inquiry of Judge Ward, or examined the district court records, he would have ascertained facts and parties that would have led him to a full knowledge of the condition of this title and the claim of Lucy Brown. Houston Oil Co. of Texas et al. v. Sarah L. Hayden, 104 Tex. 175, 135 S. W. 1149; Moody & Co. v. Martin (Tex. Civ. App.) 117 S. W. 1015; Ramirez v. Bell (Tex. Civ. App.) 298 S. W. 924, and authorities there cited.

In the Houston Oil Company Case, supra, our Supreme Court, speaking through Judge Williams, in defining innocent purchaser, says:

"To constitute him such, three elements were essential—valuable consideration, absence of notice and good faith. 2 Pomeroy Eq. § 745. In many cases the transaction is such that the questions of consideration and notice are practically the only ones; the element of good faith being regarded as present or absent according to the findings on those points. But it is nevertheless an element essential to the protection given an innocent purchaser and if, in a given case, notwithstanding evidence of the payment of a valuable consideration and of the absence of notice, there remains a question as to the existence of good faith in the transaction on the part of the purchaser, that, too, must be resolved in his favor before the claimed protection can be given. Id. § 762. Although there be no knowledge of an adverse claim, and no circumstances actually brought to the attention of the intending purchaser pointing to one, he may yet appear to have remained purposely ignorant of facts of which he would have learned had he been scrupulous about the rights of others; the circumstances may show that he has merely speculated on the absence of the proper record evidence of claims, not actually known but suspected by him to exist, by attempting to acquire, through the aid of the registration laws, a title which he does not really believe to be in his grantor. Such, in our opinion, would be a flagrant case of bad faith. * * *"

In the Moody Case, supra, the Court of Civil Appeals, speaking through Judge Fly, holds that one who has notice of such facts affecting the title to real estate as would lead to a discovery of the truth upon proper inquiry, and who stops in an inquiry of that point, to which a prudent man, under the circumstances, would go, is not a purchaser in good faith.

In the Ramirez Case, supra, in which case writ of error was refused by the Supreme Court, the facts show that the land in litigation was worth $9,000 to $15,000, and the consideration paid, as shown by the deed was $5,000. The Court of Civil Appeals, speaking through Chief Justice McClendon, held that this was such an inadequate consideration as to present a fact question for the jury.

26 Cyc. 797, defines "speculation" as "a term which when used with regard to a purchaser of property is said to mean that the purchaser is getting the property for much less than it is worth."

The Century Dictionary and Cyclopedia defines speculation as "the investing of money at a risk of loss on the chance of unusual gain. * * *"

Webster's New International Dictionary defines the word "speculate" as "to enter into a business transaction or venture from which the proceeds or returns are conjectural, because the undertaking is out of the ordinary course of business; to purchase or sell with the expectation of profiting by anticipated but conjectural fluctuations in price, often in a somewhat depreciative sense, to engage in a hazardous business transaction, for the chance of unusually large profits."

This same authority defines "speculation" as "the act of speculating, by engaging in business out of the ordinary, or by dealing with a view of making profit from conjectural fluctuations in the price rather than from earnings out of the ordinary profit of trade, or by entering into a business venture involving unusual risks for a chance of an unusually large gain or profit."

Now, applying the rule laid down by Judge Williams in the Houston Oil Co. Case, supra, to the very fair and candid testimony of Judge Ward, we think that it is conclusively shown that Kleas was not, in law, a purchaser in good faith.

Apply the rule laid down by Judge Fly in the Moody Case, supra, and Kleas had notice of such facts affecting the title to the land in question in this suit as would have led to a discovery of the truth had he made proper inquiry, and, he having failed to make such inquiry as a prudent man under the circumstances should have made, he cannot be a purchaser in good faith.

Applying the definitions above quoted,

Kleas had notice that he was buying land in litigation, and was indulging in a speculation. He therefore had notice in Judge Ward's letter that he was getting property at much less than it was really worth, and in making this purchase he was entering into a business venture involving unusual risks for a chance of making an unusually large gain or profit. He was also expressly informed, by being told that the transaction was indulging in a speculation, that he was entering into a business transaction or venture from which the proceeds or returns would be conjectural, in that the undertaking was out of the ordinary course of business, and that, in making this purchase, he was engaging in a hazardous business transaction for the chance of unusually large profits. We therefore hold, as a matter of law, that under the above facts Kleas was not an innocent purchaser without notice as against the equitable title of Lucy Brown.

[2] If the action of the trial court in withdrawing the case from the jury and entering judgment for Kleas was correct upon any theory, such judgment should be affirmed, whatever reason was assigned therefor, or whether any reason was assigned therefor. Holland v. Nimitz, 111 Tex. 419, 232 S. W. 298, 239 S. W. 185, and Associated Oil Co. v. Hart (Tex. Com. App.) 277 S. W. 1043.

[3] This brings us to a consideration of the question as to whether Green had a good title as against the equitable title of the plaintiff in error, Lucy Brown. If Green had a good title to the land in controversy, Kleas, who took under Green, would be protected, regardless of the fact that he (Kleas) took from Green with notice of the equitable title of Lucy Brown. Lafarre v. Knight (Tex. Civ. App.) 101 S. W. 1034; R. B. Godley Lumber Co. v. Teagarden (Tex. Civ. App.) 135 S. W. 1109; and 27 R. C. L. § 449.

[4] The undisputed evidence shows that Green, acting as the agent of N. F. Brown, procured a contract to make an oil and gas lease between N. F. Brown and R. L. Autrey, as lessee. This contract was dated November 10, 1921, and covered one-half the 40-acre tract in this suit. On November 21, 1921, this contract was consummated by plaintiff in error, G. B. Hopper, executing and delivering to R. L. Autrey the oil and gas lease provided for in the contract between N. F. Brown and said Autrey. This was done because, at the time the contract was made, and also at the time the lease was made, G. B. Hopper held the record title to the land, and, so far as the record showed, N. F. Brown had no interest therein. G. B. Hopper, who held the record title, received the entire consideration for the lease and, so far as the record shows, N. F. Brown received no part of same. It is shown by the attachment writ that on the same day the lease was made by

Hopper to Autrey that Green sued N. F. Brown and G. B. Hopper in the county court at law of Harris county, Tex., for this commission, and on the same day, November 21, 1921, had writ of attachment issued against N. F. Brown and G. B. Hopper, and said attachment writ was levied on the land in litigation in this suit as the property of N. F. Brown and G. B. Hopper. Lucy Brown was made a party to this suit at some time we are not able to say.

When the writ of attachment was issued and served, the land stood on the records of Harris county as the property of G. B. Hopper. When the case in the county court at law was tried N. F. Brown had died, his death having occurred between the date of the issuance and levy of the attachment and the trial of the case, and J. E. Walton, administrator of the estate of N. F. Brown, was made a party defendant. Defendants Lucy Brown and G. B. Hopper were dismissed from this suit on motion of plaintiff Green, and the suit was prosecuted to final judgment against the estate of N. F. Brown, deceased, and judgment had in favor of Green, and against the administrator of the N. F. Brown estate, for $700, with interest, and for foreclosure of his attachment lien as same existed on November 21, 1921, the date of the levy. It will therefore be seen from the above that Green had the land levied on under the writ of attachment as the property of N. F. Brown and G. B. Hopper. At the time the levy was made under the attachment writ the land stood on the records of Harris county in the name of G. B. Hopper and, so far as said records showed, N. F. Brown had no interest therein. Under this state of the record, and the facts above recited, we hold that Green was not an innocent purchaser, and that it was the duty of Green, before levying on said land, to have made inquiry of Hopper and N. F. Brown as to the true status of said title, and who the true owner of said land was. So far as the record shows, Green made no such inquiry before levying said writ. It will be presumed that, had he made inquiry of Hopper and N. F. Brown, he would have ascertained the truth, which was that Lucy Brown was the real owner of the land. It therefore follows as a matter of law that Green was not an innocent purchaser.

[5, 6] This brings us to a consideration of the writ of error granted on application of G. B. Hopper. The undisputed record shows that Hopper held the legal title to the land as security for debt. While the legal title was in Hopper, Lucy Brown was the real owner of the land. When the debt was paid, Hopper conveyed the legal title to N. F. Brown, by direction of Lucy Brown, she still holding the real title. N. F. Brown paid no consideration for the conveyance from Hopper to him. Under these facts Hopper would not be

liable to N. F. Brown on the warranty in his deed to N. F. Brown. Both Green and Kleas claim title under N. F. Brown, and neither of them were innocent purchasers, for the reasons heretofore stated. It therefore follows that Green and Kleas took only such rights and title as N. F. Brown had; and, since N. F. Brown had no right to recover on the Hopper warranty, neither Green nor Kleas would have such right.

We therefore recommend that the judgment of the Court of Civil Appeals and the district court be reformed and here rendered so as to award to Lucy Brown the 35 acres of land awarded to M. R. Kleas. We also recommend that G. B. Hopper have judgment against M. R. Kleas and all other parties discharging him from all liability on his alleged warranty, and that in all other respects the judgments of the district court and the Court of Civil Appeals be affirmed.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals reformed so as to award judgment to Lucy Brown for the 35 acres of land in controversy and so as to discharge Hopper from liability on his alleged warranty. In all other respects judgments of the district court and Court of Civil Appeals are affirmed. All as recommended by the Commission of Appeals.