Russell H. SITTON et ux., Appellants,

v.

**AMERICAN TITLE COMPANY OF DALLAS et al., Appellees.**

No. 16594.

Court of Civil Appeals of Texas.

Dallas.

Oct. 29, 1965.

Rehearing Denied Dec. 3, 1965.

**900**

Phil Burleson, Abney & Burleson, and Charles Ben Howell, Dallas, for appellants.

Goldberg & Alexander, James A. Baker, June R. Welch, Witts & Ewing, Blair Rugh and Lawrence Vance, Dallas, for appellees.

BATEMAN, Justice.

The appellants Russell H. Sitton and wife brought this suit for actual and exemplary damages alleging that they were the victims of an unlawful conspiracy between the defendants by which they both suffered extensive emotionally induced physical injuries, including the recurrence to Mr. Sitton of a childhood speech impediment; it being also alleged that among other ill effects Mrs. Sitton on one occasion became so emotionally overwrought by the situation that she fell from a moving automobile and sustained serious injuries. The defendants, who are the appellees here, were American Title Company of Dallas, Katherine H. Brown and husband, Jarvis L. Brown (Mrs. Brown being alleged to have been a notary public and manager, vice-president and alter ego of American Title Company), the American Insurance Company, alleged to have been the surety on the bond given by Mrs. Brown as a notary public; Leonard Cooksey Duckworth, a licensed real estate broker trading as Leonard Duckworth Agency; Trinity Universal Insurance Company, surety on Duckworth's bond as real estate broker; Harry Clifton Summer, Jr., a licensed real estate broker and vice-president of Duckworth Agency; Lawyers Surety Corporation, surety on Summer's bond as real estate broker; and Mr. and Mrs. Walter J. Moorman.

The appellants alleged that they agreed to exchange their home at 331 Andover Drive in Mesquite, Texas, on which was a mortgage securing a first lien note in favor of T. J. Bettes Company, insured and guaranteed by the Veterans Administration, for a home owned by Walter J. Moorman; that the transaction was handled by Summer as sales manager of the Duckworth Agency; that pursuant to arrangements made by that agency appellants went to the offices of American Title Company of Dallas, met with its vice-president, Katherine Brown, and executed a deed conveying their home to Moorman, leaving the deed with Mrs. Brown for further handling; that this deed

provided that as part of the consideration therefor the grantee assumed and agreed to pay the balance owing on appellants' mortgage note; that thereafter, in order to defeat Moorman's liability to assume appellants' note his name was erased after appellants had executed the deed, and the name of one Trout was substituted therefor. They further alleged that Trout failed to pay the monthly installments on the note and the property was foreclosed, resulting in a substantial deficiency which they were called upon by the Veterans Administration and T. J. Bettes Company to pay; that they, being of limited education, became very frightened and emotionally upset over these developments, the loss of Mr. Sitton's veteran's benefits and the numerous demands by mail and telephone that the deficiency be paid, all of which resulted in the physical injuries which, together with the deficiency they were called upon to pay, were made the basis of their claim for damages.

The court sustained American Insurance Company's motion for summary judgment and this was affirmed in Sitton v. American Insurance Co., Tex.Civ.App., 390 S. W.2d 34.

The case was submitted to the jury on numerous special issues, all of which were answered favorably to appellants, after which the court rendered judgment *non obstante veredicto* that appellants take nothing. In appealing to this court they assign fourteen points of error.

▆ The appellee Moorman has filed a motion to strike and disregard all of appellants' points of error as being multifarious, too general and insufficient under Rule 418, Vernon's Texas Rules of Civil Procedure. While this motion points up numerous inadequacies and defects in appellants' points of error, after reading the statements and arguments thereunder, we are of the opinion that the points do inform the court and opposing counsel of the contentions made by appellants. The motion is therefore overruled. Fambrough v. Wagley, 140

Tex. 577, 169 S.W.2d 478; Rule 422, T.R. C.P.

## Facts

Appellants pitch their case entirely on their contention that all of the appellees (except the sureties on the notary's and real estate brokers' bonds) conspired to effect the alteration of their deed, after they had signed it, in order to deprive them of a valuable right, viz., the assumption by Moorman of the balance owing on their mortgage indebtedness, to their great loss and damage because, while Moorman was a man of financial means and would have paid the debt, the substitute grantee, Trout, was of such poor financial worth that he did not pay the debt and could not be compelled to do so.

The contract of exchange, signed by Moorman and the appellants, was dated July 14, 1962 and provided that Moorman and wife sold and agreed to convey unto appellants their property known as 2219 Pleasant Drive, Dallas, Texas for a purchase price of $11,500, and that the Moormans would take in trade appellants' home located at 331 Andover Drive, Mesquite, Texas, allowing them credit "for all down payment and closing costs in amount not to exceed $700.00." This contract did not specify the balance owing by appellants on their property, and it did not provide that Moorman would assume or agree to pay any such balance. This exchange of properties was arranged for by the appellee Summer and another employee of the Duckworth Agency. Appellants testified that they were assured by these two employees and Mrs. Brown that Moorman would assume the debt.

Appellants went to the American Title Company's branch office, where they met with the appellee Mrs. Brown, vice-president and manager of the branch office of the title company, and where they signed the deed conveying their property to the appellee Moorman. The deed recited as part of the consideration the assumption of,

and the agreement "by the Grantee herein" to pay, the unpaid balance owing on the note given by appellants, in the original principal sum of $10,450, when they purchased the property. This deed was dated September 7, 1962. At some subsequent time the names of Moorman and his wife were erased in the four places where they appeared in the deed and the names W. R. Trout and wife, Joanne Trout, substituted therefor. There is some dispute in the testimony as to whether this erasure and alteration were made prior or subsequent to the signatures by appellants to the deed, but the jury found, and for the purposes of this opinion we shall assume, that it was done subsequently. Moorman called someone at the office of the title company and requested that the names of W. R. Trout and his wife be inserted as the grantees in the deed in lieu of his and his wife's names. Trout was an employee of Moorman's plumbing company. This substitution was made by someone in the office of the title company. Trout failed to pay the installment due on appellants' note on May 1, 1963 and appellants thereafter, beginning in June 1963, began receiving letters from the Veterans Administration demanding payment, threatening foreclosure and telling appellants that unless they made satisfactory arrangements for curing the default they would lose their property and their credit standing in the community would be seriously affected and, in addition, that if the property should sell at foreclosure sale for less than the debt, they might become indebted to the United States Government for the deficiency. The property was foreclosed on in February 1964, and the Veterans Administration notified appellant Sitton by letter dated June 5, 1964 that he owed an indebtedness of $524.95 plus 4% interest because of the foreclosure on the property. This letter also contained this statement:

"You may request a waiver of this debt if you feel this obligation arose out of compelling reason without fault on your part, and collection of the indebtedness would work a severe hardship on you or your family."

Sitton did not reply to that letter, and about six weeks later received another letter from the Veterans Administration dated July 20, 1964, remarking that no reply had been received to its former letter and that the debt "must be paid," and stating that:

"Government regulations place a definite limit upon the time during which the Veterans Administration may handle the collection of debts before the matter is referred to the General Accounting Office for action, including referral to the Department of Justice, if required."

These and other communications from the Veterans Administration and T. J. Bettes Company caused the great emotional upheaval which appellants say caused the physical impairments which form the basis of their demand for damages in this case. Mrs. Sitton first learned of the foreclosure about April 1, 1964, and when she told her husband of it she became "terribly upset" and fell out of the car door and sustained rather serious injuries necessitating heavy medical expenses.

*Opinion*

Underlying this claim is the supposition by appellants that Moorman had in some way assumed their indebtedness and agreed to pay it, but that the defendants conspired together to nullify that obligation by causing the Moormans' names to be erased from the deed (it being provided in the deed that the named grantee assumed the debt and agreed to pay it) and substituting therefor the name of Trout, who had a very poor credit rating and who defaulted.

In the first place, we find no evidence in the record, and our attention is directed to none, that any of the appellees conspired with any of the others to do any act having the effect of nullifying any enforceable agreement on the part of Moorman to assume or pay the balance owing on

appellants' indebtedness. Neither do we find evidence that any two or more of them engaged in concerted action to accomplish any such purpose or agreed to do so. For that reason alone, appellants' case falls, for they assert liability exclusively on the theory of conspiracy, and no conspiracy is shown to exist in the absence of proof that two or more persons have combined or agreed to accomplish by concerted action some unlawful purpose, or to accomplish some lawful purpose by unlawful means. Great Nat'l Life Insurance Co. v. Chapa, Tex. Sup.Ct., 1964, 377 S.W.2d 632; Kingsbery v. Phillips Petroleum Co., Tex.Civ.App., 315 S.W.2d 561, wr. ref. n. r. e.

■ When we examine the evidence to determine whether in fact Moorman made any such enforceable agreement, all we find to that effect is the testimony of one McMaster, a loan service representative of the Veterans Administration, who testified on cross-examination that during his investigation in November 1964 Moorman told him that he had assumed the Sittons' indebtedness in connection with their exchange of houses. While this may have constituted some evidence of the fact as against Moorman, it was clearly hearsay as to the other alleged conspirators.

There is no direct evidence, as distinguished from the foregoing evidence of admissions against interest, that Moorman ever agreed to pay or assume the debt, or that he ever accepted a deed reciting any such obligation on his part. Appellants argue that Mrs. Brown, who was present when they signed the deed, accepted it as Moorman's agent. However, we find no evidence that Moorman ever authorized Mrs. Brown to act as his agent in that respect, or that he ratified anything she did purporting to act as his agent. In fact, we find no evidence that Moorman ever knew that the deed contained the provision for assumption of the debt by the grantee named therein. The substitution of Trout's name for his as grantee was done at his request while the deed was still in possession of the

title company and before it had been delivered to anyone. Moreover, neither we nor the appellants have a right to assume that if Moorman's name had remained as grantee in the deed he would have accepted it. The written contract of exchange did not obligate him to do so, and appellants make no effort in this suit to enforce any such obligation. Their suit is strictly one in tort for damages.

Appellees contend that even if there had been a conspiracy between them to do the wrongful act of which they are accused, the emotional disturbances and resulting injuries could not have been anticipated or foreseen by them and are therefore too remote to form the basis of a recovery against them. In reply appellants say that, since this is not a negligence case, it was not necessary for them to prove proximate cause. They contend that this case is similar to, and should be governed by the principles of law announced in, cases like Thompson v. Hodges, Tex.Civ.App., 237 S.W.2d 757, wr. ref. n. r. e., where the plaintiff, a railroad worker, was assaulted by his yard master; and Eastern Texas Electric Co. v. Baker, Tex.Civ.App., 238 S.W. 335, reversed on other grounds Tex.Com.App., 254 S.W. 933, where a colored passenger in a streetcar was kicked by the conductor in a ruction over seating arrangements. It was held in those and other cases that proximate cause is not an issue where the injury or damage is inflicted willfully or intentionally, for in such a case the actor is presumed to have intended the consequences. 40 Tex.Jur.2d, Negligence, § 17, p. 468.

■ The rule is well stated as follows in 25 C.J.S. Damages § 25b, p. 489:

"In the case of willful torts the wrongdoer is responsible for *the direct and immediate consequences* regardless of whether they might have been contemplated, foreseen, or expected. Where the act is criminal or unlawful, the wrongdoer is held liable not only for immediate and natural consequences

but for all such consequential injuries *as might reasonably be anticipated as the probable result of the wrongful act."* (Italics ours.)

But that is not to say that the perpetrator of a willful, wrongful, or even criminal act is liable in damages for every harm, no matter how remote, that might be related to the act complained of. A defendant in such a case cannot be held responsible for remote consequential injuries that could not have been reasonably anticipated as a probable result of his act.

■ Appellants cite a number of cases, beginning with Hill v. Kimball, 76 Tex. 210, 13 S.W. 59, to establish the now well settled rule that recovery may be had for fright, accompanied by physical injury, caused by the defendant's deliberate or negligent act; but in each of those cases it was also held that the complainant was under the necessity of showing that the defendant's act was a proximate cause of the fright and injury and that the injury ought, in the light of all the circumstances, to have been foreseen as a natural and probable consequence thereof. One of the cases relied on by appellants is St. Louis & S. W. Ry. Co. of Texas v. Thompson, 102 Tex. 89, 113 S.W. 144, wherein Thompson sued several defendants as conspirators to recover damages, alleging they wrongfully and maliciously caused him to be expelled from his union, and wherein the Supreme Court held that if he could prove his expulsion was wrongful he would be entitled to recover against the conspirators "all damages which naturally flowed from such expulsion."

■ Appellants became interested in Moorman's house at 2219 Pleasant Drive in the summer of 1962 and the exchange was effected in September 1962. Apparently Trout paid the installments due on the Sittons' mortgage for several months, for the record is clear that the installments due each month until May 1, 1963 were paid. The letters which so upset the Sittons didn't start coming to them until some time in June 1963, after which four notices of foreclosure sales were posted to take place in October, November and December, 1963, with the foreclosure actually occurring in February 1964. At no time did appellants accept the Veterans Administration's invitation to request a waiver of the debt on the ground that the obligation for the deficiency arose without fault on their part and that its collection would work a severe hardship on them. Under these circumstances, can the appellants' injuries properly be said to have "naturally flowed" from the alteration of the deed? Were they "directly or immediately caused by the wrongful act"? We think each of these questions must be answered in the negative.

Appellants' Points of Error Nos. 1, 2, 3, 5, 6, 7, 8 and 9 assert error of the trial court in making certain "holdings" in the rendition of the judgment. We find no such "holdings" in the transcript; the judgment merely recites that the court is of the opinion that the defendants are entitled to judgment as a matter of law. It is our view that the evidence admits of no judgment other than that rendered, and that it must therefore be affirmed, regardless of the grounds or reasons the trial court may have thought controlling. 4 Tex.Jur.2d, Appeal and Error—Civil, p. 437, § 861; Fant v. Sullivan, Tex.Civ.App., 152 S.W. 515, 522, wr. ref.

Point No. 4 says the court erred in holding that there was no evidence to support any of the jury's findings that the deed in question was altered as a result of a conspiracy between Summer, Brown and Moorman, or any of them. This holding is implicit in the judgment rendered, and it should be clear from what we have said above that we agree that there was no such evidence.

The first nine points of error are overruled.

■ Their tenth point does not comply with Rule 418(b), T.R.C.P., in that it fails to direct our attention to any error relied

on for reversal. It merely asserts that appellants are entitled to recover exemplary damages because they were injured by the unauthorized practice of law by the Title Company and Mrs. Brown; and then attacks the constitutionality of Article 9.01, Texas Insurance Code, V.A.T.S., insofar as it provides that title companies may supervise signing of legal instruments, deliver instruments and "close deals". By this point appellants attempt for the first time to raise an issue not mentioned in the pleadings or evidence in the trial court. Moreover, we see no merit in the point and overrule it.

By their Points of Error Nos. 11 and 12 appellants complain (11) of the refusal of the trial court to submit their requested Special Issues 18, 19, 19–A and 20 inquiring as to the amount of the deficiency due under the note in question after the foreclosure, and in rejecting Mrs. Sitton's testimony as to payments thereon, and (12), alternatively, of the failure of the trial court to render judgment for the foreclosure deficiency, the amount thereof being uncontroverted. Appellants having relied exclusively on the theory of conspiracy to establish any liability against appellees, and this court having held that there was no evidence of a conspiracy to alter the deed in question, or of alteration of the deed as a result of conspiracy, it follows that there was no reversible error in rejecting either the special issues or the testimony, or in failing to render judgment for appellants for the foreclosure deficiency. Points 11 and 12 are overruled.

█ Like their tenth point, appellants' Points of Error 13 and 14 fail to complain of any specific error of the trial court. They merely assert that the judgment *non obstante veredicto,* having been rendered on grounds other than those specified in the motions therefor, and in the face of evidence of probative force supporting the verdict, was contrary to the laws of procedure and denied appellants due process and the equal protection of law guaranteed to them by Article 1, §§ 15 and 19, of the Texas Constitution, Vernon's Ann.St. and the Seventh and Fourteenth Amendments to the United States Constitution. The argument under these points does no more than trace the evolution of the jury system from its nebulous origins in the hazy mists of antiquity, extol its many virtues and accuse the trial court generally of substituting its fact determination for that of the jury. Our attention is directed to no specific evidence supporting any part of the verdict; nor is it demonstrated how appellants' said constitutional rights were violated. Our examination of the record discloses to us no such evidence and no such violation. Therefore, we say again that the motions for directed verdict should have been sustained and that the judgment *n. o. v.* was correct. Rule 301, T.R.C.P.; Bolin v. Pacific Finance Co., Tex.Civ.App., 278 S.W.2d 879, no wr. hist. Points 13 and 14 are overruled.

All of the appellees except Lawyers Surety Corporation have filed numerous cross points which are entitled to, and have received, our careful attention. However, being of the opinion that a recitation of the testimony, special issues and jury argument complained of, together with a full discussion of our views thereon, would add nothing to an understanding of this case or be of "importance to the jurisprudence of the State," Rule 452, T.R.C.P., we merely indicate below our decision on each of these cross points.

Cross points of appellees American Title Company of Dallas, Katherine and Jarvis Brown:

Nos. 1, 6, 7, 8 and 9 are overruled.

Nos. 2, 3, 4 and 5 are sustained.

No. 10, being submitted conditionally on reversal, is not considered.

Cross points of appellees Duckworth, Summer and Trinity Universal Insurance Company:

Nos. 1, 2, 3, 4, 5, 6, 7 and 8 are overruled.

Nos. 9 and 10, being submitted conditionally on reversal, are not considered.

Cross points of appellee Moorman:

Nos. 1, 2, 3, 4, 7 and 10 are overruled.

Nos. 5, 6, 8 and 9 are sustained.

As we read this record, the trial court gave appellants every reasonable opportunity to make out a case against the appellees. We agree with the trial court that they failed to do so. The judgment is therefore

Affirmed.