Durwood O. PHILLIPS et al., Appellants,

v.

C. T. LATHAM et ux., Appellees.

No. 18483.

Court of Civil Appeals of Texas, Dallas.

Feb. 20, 1975.

Rehearing Denied May 1, 1975.

H. Averil Sweitzer, Dallas, Howard D. Pattison, Eustace, for appellant, Charles Ben Howell.

Neil Brans, Dallas, for appellant, D. O. Phillips.

John A. Pace, Pace & Chandler, Dallas, for appellees.

GUITTARD, Justice.

This suit arose out of an allegedly wrongful trustee's sale of a residence owned and occupied by plaintiffs C. T. Latham and wife. They sued C. R. Smith (or Carolyn R. Smith), who had held a second-lien note secured by the deed of trust under which the property was sold, Charles Ben Howell, an attorney, who acted as substitute trustee, and Durwood Phillips, who bought the property at the sale. Plaintiffs' petition includes a count in trespass to try title and also a count for actual and exemplary damages for "illness and many hours of worry," and loss of time from their work, caused by an alleged conspiracy between the defendants to deprive plaintiffs of their home. After a jury trial, judgment was rendered in plaintiffs' favor against all defendants for title to the property, and against defendants Phillips and Howell for damages, and these defendants appeal.

We hold that the judgment for title was correct, but that the recovery of damages is without support in the evidence.

### Title

Defendant Phillips asserts that he purchased the property at a valid trustee's sale on September 2, 1969. Alternatively, he claims under a second trustee's sale on March 2, 1971. Plaintiffs contend that neither of these sales passed title to the property because the indebtedness was not in default when either sale was made. We

conclude that the verdict establishes that the indebtedness was not in default at the time of either sale.

■ The verdict must be construed in the light of the evidence. The promissory note in question was payable in twenty-dollar installments, due on the twentieth day of each month. C. R. Smith acquired the note in June 1969. Shortly afterward, defendant Howell, acting for her, wrote plaintiffs a letter notifying them of her acquisition of the note and advising: "Payments may be made by personal check as long as a valid check is actually received before the due date." The letter states further: "[P]ayment must be in the hands of the undersigned owner before the due date." Howell's law-office address appears on the letter, apparently as the address to which payments should be sent.

Default in payment of the monthly installments was a sharply contested issue. Admittedly, the installment due June 20, 1969, was duly received and acknowledged. Howell testified that no payments were received after that time. Plaintiffs testified that they mailed the checks every month to C. R. Smith at the address given. Although the court's charge did not expressly submit the issue of "default," the jury found in response to issues submitted that after plaintiffs were advised that C. R. Smith has acquired title to the second-lien note, plaintiffs mailed twenty-dollar checks to C. R. Smith for twenty-one months beginning July 20, 1969, on or before the due date of each installment, and that if each of the checks had been presented to the bank monthly in due course of business, all would have been paid. The last of the twenty-one monthly payments so found by the jury would have been on March 20, 1971. Under these circumstances, the jury's findings established that no default occurred because of failure to pay any of the monthly installments due before the dates of either the trustee's sale on September 2, 1969, or the sale on March 2, 1971.

Defendant Phillips contends that even though the verdict may establish that the monthly payments were not in default at the time of the first trustee's sale in September 1969, it does not establish that all payments were properly made before the second trustee's sale in March 1971. He argues that after September 1969, all payments were made to the wrong party because, even if the first sale was void, it nevertheless operated as an equitable assignment to him of the note and lien.

■ This argument is without merit because plaintiffs had no notice that anyone other than C. R. Smith was the holder of the note. The jury found, on sufficient evidence, that the first notice to plaintiffs that the property had been sold to Phillips was after the second trustee's sale, when they received a notice to vacate preliminary to a forcible detainer suit, which Phillips later filed. Payment to the original creditor is effective as against an assignee if made in good faith, without notice of the assignment. Olshan Lumber Co. v. Bullard, 395 S.W.2d 670, 672 (Tex.Civ.App., Houston 1965, no writ).

■ Defendant Phillips also contends that plaintiffs were in default at the time of the second trustee's sale in March 1971, because they had failed to pay the ad valorem taxes and had failed to keep the property insured in favor of the holder of the indebtedness. The deed of trust provides that on failure of the mortgagors to pay the taxes and keep the property insured in favor of the holder of indebtedness, "the whole amount of said indebtedness remaining unpaid, shall at the option of the party of the third part, or other holder thereof, without demand, presentment and notice immediately mature and become payable." The trustee is authorized to sell the property only upon the holder's exercise of the option to declare "the whole amount of the indebtedness" immediately payable. The deed of trust also provides that the holder "shall have the option of paying taxes and insurance hereunder and in such event the sum so expended shall operate as a lien on the real property herein described and be secured hereby." Defendant Phillips proved

that he had paid the taxes for 1970 in the amount of $210.27, and had also procured insurance in his favor, for which he had paid a premium of $128.51.

To this contention plaintiffs reply that the provisions of the deed of trust dispensing with demand and notice do not apply in the particular circumstances of this case. We agree. Phillips purchased the property in September 1969, at a trustee's sale, which we hold to be void under the jury's findings. He accepted a trustee's deed, which was recorded in the deed records and returned to him. Accordingly, the tax notices for 1970 were sent to him rather than to the Lathams. He did not forward them to the Lathams, and neither did he make demand on the Lathams for payment. According to the jury's findings, he did not even notify them that he had bought the property. Instead, he paid the taxes himself and procured insurance on the property for his own benefit. Thus he affirmatively kept the Lathams from receiving the tax notices which they would normally have expected to receive. Under these circumstances, he is not entitled to assert that they were in default under the deed of trust for failure to pay the taxes and the insurance premiums without some sort of notice giving them an opportunity to reimburse him for these items.

■ Moreover, the trustee's sale cannot be supported on the theory of default in payment of taxes and insurance premiums because the record affirmatively shows that the balance of the note was never accelerated on this ground. Under the terms of the deed of trust, the holder of the note has the option to accelerate the balance of the indebtedness on failure of the mortgagor to keep the taxes paid or on failure to keep the property insured in favor of the holder, and upon the holder's exercise of his option to accelerate the balance of indebtedness on this default or for some other default under the deed of trust, the trustee is authorized, at the holder's request, to sell the property. This option to accelerate

must be exercised in some manner. *See* Jernigan v. O'Brien, 303 S.W.2d 515, 516 (Tex.Civ.App., Austin 1957, no writ); Parker v. Mazur, 13 S.W.2d 174, 175 (Tex. Civ.App., San Antonio 1928, writ dism'd).

The record fails to show any exercise of the option to accelerate after Phillips paid the taxes and insurance premiums. Exercise of such an option would be inconsistent with Phillips's claim that he became the owner of the property by virtue of the first sale. Evidently, Phillips paid the 1970 taxes and procured insurance on the property for his own benefit by reason of his claim as owner, not by reason of his alternative claim, which he now asserts, that he was equitable assignee of the note and lien. If Phillips had asserted the rights of an equitable assignee of the note and lien before March 1971, and, in some effective manner, had exercised the option to accelerate because of the Lathams's failure to pay the taxes and insurance premiums, then, perhaps such failure would support the trustee's authority to make the second sale. His present contention that the second sale was authorized by default in payment of the taxes and insurance premiums is clearly an afterthought. The option to accelerate cannot be exercised retroactively after the sale.

For similar reasons, the record shows that Phillips's supposed assignor, C. R. Smith, did not exercise this option on his behalf. She no longer had the right to accelerate the balance and request the trustee to sell on her own behalf, since she had accepted the amount of his bid at the first trustee's sale in September 1969.

■ Phillips contends further that since the trustee's deeds and other foreclosure documents are regular on their faces and appear to be sufficient to pass title, plaintiffs cannot assert title against him in an action in trespass to try title, but must specifically plead and prove equitable grounds to avoid the trustee's sale. We do not agree. Under the jury's findings, as we have construed them, payments on the

note were not in default at the time of either of the trustee's sales. Consequently, the substitute trustee had no authority under the deed of trust to sell the property. Both trustee's deeds are void, not merely voidable, and, therefore, plaintiffs may maintain a suit in trespass to try title without alleging equitable grounds to avoid the trustee's deed. Slaughter v. Qualls, 139 Tex. 340, 162 S.W.2d 671 (1942).

Phillips' attempts to distinguish *Slaughter* on the ground that in that case the noteholder was the purchaser at the trustee's sale, whereas here, Phillips was not the noteholder, but paid the amount of his bid in cash. This difference is not controlling. *Slaughter* holds that subsequent purchasers in good faith acquire good title, not on the theory that title actually passed by the trustee's deed, but rather on an estoppel theory, since the option states that the mortgagor, by executing the deed of trust, made it possible for the trustee to create the appearance of good title in the original purchaser at the trustee's sale, so that it would be inequitable to permit the mortgagor to show otherwise as against those who purchased in good faith in reliance on such an appearance. Defendant Phillips has failed to establish the elements of estoppel.

■ Neither has Phillips established that he is a good-faith purchaser. The general rule is that one claiming to be a good-faith purchaser has the burden of proof on that issue. Fenley v. Ogletree, 277 S.W.2d 135, 141 (Tex.Civ.App., Beaumont 1955, writ ref'd n. r. e.); *see* Watkins v. Edwards, 23 Tex. 443, 448 (1859). Phillips relies on Connor v. Lane, 355 S.W.2d 223, 224 (Tex.Civ.App., Waco 1962, no writ) as holding that in a trespass to try title suit the burden of proving that a third party is not an innocent purchaser rests on the plaintiff. Connor stands for the rule that the holder of an *equitable* title has the burden to show that a subsequent purchaser of the *legal* title is not an innocent purchaser. That rule does not apply here because plaintiffs claim as holders of

the legal title rather than as holders of an equitable title. If the substitute trustee had no authority to make the sale, then no legal title passed to the purchaser, under the *Slaughter* rule. *Slaughter* does not pass directly on the rights of a third-party purchaser at a void trustee's sale, but it is consistent with the view that such a purchaser is subject to the general rule that one who claims to be a good faith purchaser has the burden of proof on that issue. We hold that the general rule applies here.

Defendant Phillips has not carried that burden. No issues were submitted to the jury concerning the defense of good faith purchaser, and no complaint is made here of the refusal of any requested issues. Neither does Phillips contend that he established a defense of innocent purchaser as a matter of law. Consequently, we hold that the *Slaughter* rule applies, and that the trial court properly rendered judgment for plaintiffs for title to the property.

■ Moreover, Phillips cannot claim to be a good-faith purchaser for value because the jury found that the value of the property at the time of the first sale was $12,500 and at the time of the second sale was $14,000, and further found that the sale price of $691.43 was grossly inadequate. These findings are not attacked for lack of evidence. Although good faith does not necessarily require payment of the full value of the property, a purchaser who pays a grossly inadequate price cannot be considered a good-faith purchaser for value. Nichols-Steuart v. Crosby, 87 Tex. 443, 29 S.W. 380, 382 (1895); Hume v. Ware, 87 Tex. 380, 28 S.W. 935, 936 (1894); *cf.* Hopper v. Tancil, 3 S.W.2d 67, 70 (Tex. Comm'n App.1928, jdgmt. adopted).

■ Phillips also contends that plaintiffs are not entitled to recover the land without tendering the balance of the debt, or at least, pleading their willingness to do so. He cites De Guerra v. De Gonzalez, 232 S.W. 896, 901 (Tex.Civ.App., San Antonio 1921, no writ) for its holding that even when a foreclosure sale is void, and

the mortgagor sues in trespass to try title to recover the land, he must plead his willingness to pay the balance of the indebtedness. Under *De Guerra,* however, the plaintiff mortgagor was held to have this burden only when the defendant had alleged the debt and lien in his pleading and the plaintiff had failed to *reply* to this pleading by offering to pay the debt. Moreover, in *De Guerra,* judgment was not rendered against the plaintiff on appeal, but instead the case was remanded to give the plaintiff an opportunity to amend and do equity. Likewise, in Galveston, H. & S. A. Ry. v. Blakeney, 73 Tex. 180, 11 S.W. 174, 175 (1889), the plaintiff in a trespass to try title suit was denied recovery because he had failed to plead his willingness to pay an indebtedness to defendant in *reply* to a defensive plea alleging such indebtedness.

Here Phillips has not pleaded, even alternatively, that the Lathams owe him the balance due on the note, which they should pay before they are allowed to recover title to the land. Nevertheless, the trial court required plaintiffs to do equity, in that Phillips was allowed the amount he had paid for the land by crediting that amount against the judgment against him for damages. In view of our reversal of the judgment for damages, we remand the cause with instructions to require plaintiff to do equity, as will be more fully set out after we have discussed the question of damages.

■ We reject also Phillips's contention that he has the rights of a mortgagee in possession, which prevent plaintiffs' recovery of the land by plaintiffs without tendering the balance of the debt. In the first place, Phillips has not established that he is a mortgagee *lawfully* in possession. He admits that plaintiffs have never been dispossessed from their occupancy of the property, but contends that they have judicially admitted that he is in possession by their formal allegations in trespass to try title. Those allegations may admit possession, but they do not admit "lawful" possession. The petition alleges that de-

fendants *"unlawfully* entered upon and dispossessed them of such premises and withhold from them possession thereof." [Emphasis added.] The authorities on which Phillips relies, particularly Jasper State Bank v. Braswell, 130 Tex. 549, 111 S.W.2d 1079, 1081 (1938), hold that a mortgagee *lawfully* in possession has the right to retain possession until his debt is paid.

■ In the second place, under the authorities Phillips cites, a plaintiff suing in trespass to try title has the burden to plead willingness to pay a debt to defendant only if defendant has pleaded his claim as a mortgagee in possession, and such a pleading by defendant does not defeat the plaintiff's suit, but only prevents a judgment being rendered against defendant without protecting his rights to payment of the indebtedness due to him. Willoughby v. Jones, 151 Tex. 435, 251 S.W.2d 508, 513 (1952); Jasper State Bank v. Braswell, *supra,* 111 S.W.2d at 1086; and *see* Morrow v. Morgan, 48 Tex. 304, 309 (1877).

For all the above reasons we hold that the trial court properly rendered judgment against defendants for title and possession of the land.

### Damages

■ The Lathams alleged that they suffered "illness and many hours of worry," and also lost earnings, as a result of a conspiracy between defendants Phillips, Howell and Smith to deprive them of their property by a purported trustee's sale. The jury found that such a conspiracy existed between Phillips and Howell, and that because of this conspiracy C. T. Latham suffered personal injury damages of two thousand dollars and his wife suffered personal injury damages of three thousand dollars. The jury also found that the Lathams should be awarded exemplary damages of ten thousand dollars against Howell. The trial court rendered judgment for these damages. We conclude that the findings of actual damages are without support in the evidence because there is no

evidence of a causal relation between the acts of defendants and any physical pain or illness suffered by plaintiffs, and no recovery for mental suffering alone is permitted in this kind of case. Since no actual damages have been proved, exemplary damages also must be denied.

In the damage issues the jury was instructed to consider "physical pain and mental anguish" in the past and in the future, and loss of earnings in the past. Since the jury found a single amount of damages for each plaintiff, without separate findings on each item specified, we must consider whether any of the items included in the issues were supported by the evidence.

We begin with "physical pain." Since no direct physical injury was pleaded or proved, this item of damages must rest on proof of some type of physical illness caused by the wrongful trustee's sale. We find no such proof. C. T. Latham testified that he suffered illness since filing the suit. His only illnesses shown in the record were conditions which required two periods of hospitalization late in 1971. The doctor who treated him did not testify, but the hospital records were introduced in evidence by defendants. His complaint when first admitted to the hospital on October 31, 1971, was "lower abdominal pain for the last five months." When he was discharged on November 5, the doctor noted that the chief complaint was "lower gastric pain," and that the patient "has been having difficulty with this condition for the past 2–3 years." The final diagnosis was "[a]cute gastritis with hypercholesterolemia." Latham was again admitted on November 26 with a complaint of pain in the lower abdomen. This time the diagnosis was "acute prostatitis with cystitis." After treatment for this illness, he was discharged on December 1, with a notation that his condition was improved. Latham testified that the doctor gave him a different diagnosis, but this testimony is hearsay and has no probative force. The records for both periods of hospitalization contain forms for recording the patient's history and the results of

examinations, and on both of these forms, under the heading "Nervous and Mental," is the same notation, which is as follows: "There were no nervous and mental symptoms. No anxiety, depression, etc." Thus the records apparently exclude any causal relation between defendant's acts and these illnesses.

Latham did not attempt in his testimony to express an opinion concerning the cause of the particular illnesses which required his hospitalization. His wife was asked if her husband's hospitalization was caused by the acts of the defendants, and she answered, "Yes, sir, they were." This conclusion is without any factual support, since the only reason she gave was, "Well, it was certainly brought on after we were forced to go into the suit."

We hold that there is no competent evidence of a causal relation between the acts of defendants and Latham's illnesses, and, consequently, that there is no evidence to support any recovery in favor of C. T. Latham for "physical pain."

Evidence is also lacking that defendants' acts caused any "physical pain" to Mrs. Latham. She testified that she did not go to the hospital, but that she saw a doctor for a "twisted left ankle" about a year and a half after plaintiffs learned of the second trustee's sale. When asked if that condition was caused by the wrongful foreclosure, she answered, "It certainly could have been." Mrs. Latham also testified that after she went to Howell's law office to give her deposition in November 1973, she "had a heart attack," and "was in bed for a week and had quite a doctor bill." Neither she nor any other witness testified that this "heart attack" was caused by the wrongful foreclosure. If it was caused by her having to give a deposition in the suit that she and her husband had brought, such an illness would be too remote for recovery of actual damages.

 Apart from the lack of any evidence of a causal relation between defendants' wrongful acts and the "illnesses"

of which plaintiffs complain, we conclude also that such "illnesses" could not have been reasonably foreseen as a probable consequence of defendants' acts. Even an intentional wrongdoer has no liability for remote consequential injuries that could not have been reasonably anticipated as a probable result of his acts. Sitton v. American Title Co., 396 S.W.2d 899, 904 (Tex. Civ.App., Dallas 1965, writ ref'd n. r. e.), cert. denied, 385 U.S. 975, 87 S.Ct. 501, 17 L.Ed.2d 437 (1966).

The evidence of "mental anguish" suffered by the Lathams is also weak. The strongest testimony in this regard is that of Mrs. Latham, who said, when asked about the illness for which her husband was hospitalized: "Well, it was a nervous problem that he didn't sleep for weeks and weeks because we were just so aghast to think that anyone would try to take a home away from us after we had worked so hard to pay for it, . . . and you can just imagine what a blow it was to us when we found out after we slaved and paid for the property somebody else wanted it."

If we accept this testimony as some evidence of "mental anguish" caused by the acts of defendants, it still provides no basis for recovery of damages because it was not shown to have been accompanied by any physical illness or injury caused by defendants. Texas courts have followed the rule that mental suffering ordinarily is not ground for recovery of damages, unless accompanied by physical injury or illness. Duty v. General Finance Co., 154 Tex. 16, 273 S.W.2d 64, 65 (1954); Harned v. E-Z Finance Co., 151 Tex. 641, 254 S.W. 2d 81, 82 (1953); United Finance & Thrift Corp. v. Smith, 387 S.W.2d 752, 757 (Tex. Civ.App., Tyler 1965, writ ref'd n. r. e.). Damages for mental suffering are sometimes allowed without a showing of physical injury when defendant has committed a direct and intentional invasion of plaintiff's interest in personal security and peace of mind. Such cases include assault and battery, Fisher v. Carrousel Motor Hotel, Inc., 424 S.W.2d 627, 630 (Tex.1967);

malicious prosecution, Stein v. Greenebaum, 203 S.W. 809, 813 (Tex.Civ.App., Galveston 1918, no writ); and invasion of the right of privacy, Billings v. Atkinson, 489 S.W.2d 858, 861 (Tex.1973). In such cases the principal injury may be substantially mental and subjective. No such tort is shown here. The only tort alleged is a conspiracy to deprive plaintiffs of their property. The conspiracy has not been successful, but even if it had been, no damages from mental suffering would be recoverable. In suits involving interference with property rights, courts have been unwilling to add damages for mental suffering to the relief normally granted. Gulf, C. & S. F. Ry. v. Trott, 86 Tex. 412, 25 S.W. 419 (1894); Crawford v. Doggett, 82 Tex. 139, 17 S.W. 929, 930 (1891); Phoenix Furniture Co. v. McCracken, 3 S.W.2d 545, 550 (Tex.Civ.App., Beaumont 1928, no writ).

The only remaining item of actual damages submitted by the trial court is "loss of earnings in the past." As we read the record, the only time lost from work by either of the plaintiffs, except that resulting from illnesses not shown to have been caused by defendants' acts, was time lost because of the pendency of the lawsuit, such as that required for depositions and attendance at the two trials in this case. This loss is an expense of litigation. We know of no authority supporting recovery of actual damages for such a loss, and plaintiffs have cited none.

Since, for the reasons stated, the actual damages awarded in the conspiracy action cannot be supported, the exemplary damages awarded against defendant Howell must also fall. The rule is well settled that exemplary damages must be predicated on actual damages. General Insurance Corp. v. Harris, 327 S.W.2d 651, 656 (Tex.Civ. App., Dallas 1959, no writ).

*Judgment*

Insofar as the judgment of the trial court allows plaintiffs recovery of actual and

exemplary damages, that judgment is reversed and judgment is rendered that plaintiffs take nothing on their conspiracy count against defendants Phillips and Howell. Since this reversal leaves no recovery against which Phillips may be allowed credit for the balance of the indebtedness, the cause is remanded with instructions in accordance with the procedure prescribed in Jasper State Bank v. Braswell, 130 Tex. 549, 111 S.W.2d 1079, 1086 (1938). Defendant Phillips will be permitted to amend his pleadings to allege the amount due him. Plaintiffs will be permitted in reply to plead an offer to pay what they owe. If plaintiffs fail to plead such an offer, the court is instructed to render judgment that plaintiffs take nothing. If plaintiffs do plead such an offer, the court will, without reopening any of the points settled in this opinion, or the facts on which they are based, render judgment in favor of plaintiffs for title and possession of the property, conditioned upon and subject to payment of the amount of the indebtedness, as determined by the court, or the court will make such other order as will secure payment to Phillips of such amount. Since defendant C. R. Smith is not a party to this appeal, the judgment with respect to her is undisturbed. Costs of this appeal are taxed one-half against plaintiffs and one-half against defendant Phillips.

Reversed and remanded with instructions.

### On Motions for Rehearing

Both appellants and appellees have filed motions for rehearing. Both motions are overruled. We limit our comments to matters not discussed in our original opinion.

On submission of the cause, we permitted appellants to file a supplemental brief including additional points of error, and we discussed several of the supplemental points in our original opinion. One of the supplemental points not discussed asserts that the record contains no evidence to support the jury's finding in answer to issue number nine that if each of the installment checks, which plaintiffs assert that they mailed every month, had been presented to the bank in due course of business, they would have been paid. Another supplemental point asserts that this finding is against the great weight and preponderance of the evidence. Appellants reargue these points in their motion for rehearing. They insist that plaintiffs' bank statements reveal six occasions on which the balance would not have been sufficient to cover the checks if they had been presented promptly, and they point out that plaintiffs offered no testimony by a bank officer that the checks would have been paid, or any evidence that other checks had been paid regardless of insufficiency of funds.

We overrule these points because we do not consider the issue controlling in the light of this record. Since the undisputed evidence shows that the checks were never presented, the jury's finding that they were mailed necessarily implies that the payee accepted and held them without presenting them to the bank. Therefore, the status of the bank account is immaterial. The payee cannot retain checks tendered in payment of installments due over a period of almost two years, never present any of them for payment, and then successfully maintain that the debtor is in default on the theory that some of the checks, if presented, would not have been paid.

Appellants also renew their argument that the jury's finding in answer to issue number eight that the checks were mailed each month on or before the due date of each installment is contrary to the great weight and preponderance of the evidence. They cite various circumstances casting doubt on the credibility of Mrs. Latham's testimony that the checks were mailed. Although these circumstances may be persuasive on the issue of her credibility, we cannot say that the jury was without justification in accepting her direct and positive testimony that she mailed the checks each and every month.

Motions overruled.

*On Motion to Retax Costs*

Appellants have moved to retax the costs in this court to the extent that appellees caused to be included in the transcript various matters not pertinent to the appeal. This motion is sustained. The transcript shows that after appellants had made their request to the clerk of the trial court in accordance with Texas Rules of Civil Procedure 376, specifying the documents to be included in the transcript, appellees made an additional request "to include complete copies of all pleadings, including Petitions, Answers and Motions and all Orders entered in this cause." As a result of these requests, we have before us a transcript in three volumes, consisting of four hundred sixty-nine pages. Among the documents included are abandoned pleadings and exceptions to abandoned pleadings, motions and orders with respect to depositions, a motion for continuance, a motion in limine, a motion for summary judgment and the answer to it, and numerous other matters having no relation to the questions presented to us. This material has been of no benefit to us, but, on the contrary, has added to our labors.

Appellees' attempt to justify inclusion of the additional material on the ground that they did not know what contentions they would have to meet. The attempted justification fails. If appellees' counsel finds, on examining appellants' brief, that material documents have been omitted from the transcript, the remedy is to suggest the filing of a supplemental transcript under Tex.R.Civ.P. 428. We call attention also to Tex.R.Civ.P. 370, which refers to "[l]iberal provisions . . . in these rules for amendments on appeal to bring forward any material matter which may have been omitted." This rule adds: "With this protection the bar is expected to cooperate in shortening the records in furtherance of the provisions of these rules."

We find appellees' request for inclusion of all documents in the record not specified by appellants as contrary to both the letter and spirit of the rules, and we retax the costs accordingly. Appellants compute the cost of the additional material in this record as one hundred eighty dollars, and this figure is not challenged by appellees. Consequently, this amount of the cost of the transcript is taxed against appellees. The other costs of the appeal are taxed as provided in our original judgment.

Appellants have also asked us to clarify our judgment with respect to costs in the trial court in view of our reversal and rendition of judgment in their favor on the conspiracy count. Our judgment made no provision concerning costs in the trial court. Since we remanded the case to the trial court with instructions to proceed in accordance with our opinion, that court should make a proper allocation in its final judgment of the costs in the trial court.